## No. 10,177.

BUTCHERS' UNION SLAUGHTERHOUSE AND LIVE STOCK LANDING COMPANY VS. CRESCENT CITY LIVE STOCK LANDING AND SLAUGHTERHOUSE COMPANY.

### ON RULE OF PLAINTIFF AGAINST B. R. FORMAN.

1. Nature, origin and scope of the summary remedy by rule which courts may exercise against attorneys at law, as officers of court, considered.
2. The right of an attorney to retain, out of moneys collected for a client, the fees due for professional services, is governed, as between the attorney and client, by the law of mandate, rather than according to the rules governing privileges and compensation.
3. What is known in the English Equity System as the solicitor's retaining lien, attaches to all papers, money or chattles of the client received in the course of professional employment, and authorizes their retention for payment of all fees and charges due for professional services.
3. Arts. 3022 and 3023 Rev. C. C. considered and held to give the right to the mandatory to retain out of the property of the principal in his hands, the costs, expenses and commissions or fees due under the mandate, although the latter be not liquidated.
4. The services in question here having all been rendered under a single mandate and in matters closely connected with each other, the right to retain to amount of the value of all, is clear.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor*, J.

*Henry L. Lazarus* for Plaintiff on Rule and Appellee.

*E. Howard McCaleb* for Defendant on Rule and Appellant. *Alfred Roman* on the same side.

The opinion of the Court was delivered by

FENNER, J. B. R. Forman, Esq., was employed by plaintiff, as its general attorney, under the following written contract:

"NEW ORLEANS, March 26, 1881.

"It is hereby agreed between B. R. Forman, attorney-at-law, and the Butchers' Union Slaughterhouse and Live Stock Landing Company, that said Forman shall undertake the management of all cases now pending in court to which the said Company is a party and any case that may arise having for its object to establish the right of said company to keep slaughterhouses and stock landings at such place or places as the City Council may designate, with the approval of the Board of Health, or to prevent them from doing their business.

"And the said Forman shall exert himself with the members of the City Council and Board of Health to induce them to designate and approve such limits as may include the location of the said Company's ground at Caffin's Lane.

"In consideration whereof the Company agree to pay B. R. Forman one hundred dollars cash, one hundred dollars from 1st to 5th of May, 1881, and one hundred dollars from 1st to 5th of June, 1881. And in case of a successful termination of said litigation in favor of said Company, a liberal fee besides the fee certain above mentioned. It is understood that said cases shall be attended to in any and all courts in Louisisana, but said attorney shall not be obliged to go to Washington City without an additional cash fee and expenses.

"Any suits brought to collect stock subscriptions or other suits not involving the rights of the Butchers' Company to do business, shall be paid for by usual and customary fees.

(Signed)	B. R. FORMAN.

AMAN TROESCHER, President."

The prime object of the litigation referred to in the contract was to overthrow the monopoly and exclusive privilege claimed by the Crescent City Live Stock Landing and Slaughterhouse Company, and to maintain and establish the right of the Butchers' Union Company, with the sanction of the City Council of New Orleans and of the Board of Health, to establish and conduct the business of landing and slaughtering live stock.

There were numerous cases in which Mr. Forman rendered services under the contract.

The litigation finally resulted in the complete triumph of the Butchers' Union Company. Having obtained the concurrent approval of the City Council and of the Board of Health to its selected location, it was met

by an injunction from the United States Circuit Court, sued out by the Crescent City Company, restraining it from conducting its business, which injunction was perpetuated by a final decree in that court; but, on appeal to the Supreme Court of the United States, the decree was reversed, the pretensions of the Crescent City Company to a monopoly and exclusive privilege were denied, and the rights of the Butchers' Union Company to prosecute its business were fully recognized. Butchers' vs. Crescent City, 111 U. S. 746.

Thereupon the Butchers' Company brought its action in damages against the Crescent City Company on account of the wrongful issuance of the injunction above referred to. This action resulted in a judgment in this Court for $21,000 damages; but, on appeal to the Supreme Court of the United States, the decree was only partially affirmed and the damages allowed were largely reduced. Butchers' vs. Crescent City, 37 Ann. 874; id., 120 U. S. 746.

Under this judgment, Mr. Forman collected for his client, $6319 55. The Butchers' Company demanded that he should pay over to it the amount collected, after deducting a reasonable fee for his services in the particular suit in which the money was collected. Mr. Forman declined, claiming the right to apply the sum in payment of the fees due him for all services rendred under his contract, which exceeded the sum collected.

Thereupon the Butchers' Company resorted to this summary remedy by rule on Mr. Forman, requiring him to show cause on a day fixed why he should not pay over the amount collected less his fees and charges in this particular suit.

Mr. Forman appeared and showed cause in an answer, wherein he set forth his employment by, and contract with, defendant; the various services rendered thereunder and the fees due therefor; alleged an express agreement with plaintiff in rule that he should be paid all his fees, disbursements and expenses out of the first moneys collected by him and especially out of the damages recovered in this particular case; and finally claimed that under said "express agreement, *as well as under his legal rights without such agreement,* he has the right to retain and apply the money collected by him to the payment of his advances, costs, fees and charges as above set forth." He, therefore, prayed that the plaintiff's demand and rule be dismissed and rejected.

The issue being whether the plaintiff in rule has vindicated his right to the remedy invoked, or whether the defendant has shown good cause why such remedy should not be applied, it behooves us, at the outset,

to make some inquiry as to the origin, nature and scope of the remedy in question.

There is, in this State, no statutory provision covering the precise relief here sought. Plaintiff's counsel says, in his brief, "the rule was taken under the provisions of Section 119 of the Revised Statutes." That section reads: "If any attorney-at-law shall recover any sum of money for his client and shall neglect or refuse to pay it over when demanded, without any legal ground for such neglect or refusal, he shall, on conviction, be immediately erased from the list of attorneys, his license cancelled, and be forever incapable of appearing as such before any court of this State, and he shall not be entitled to the benefit of the insolvent laws for any sum so collected."

This statute, which is derived from an Act of 1826, obviously contemplates a criminal or quasi-criminal withholding of moneys collected and not one based on the exercise of an honestly-believed legal right.

If, however, we look to the general authority of courts over attorneys practicing before them and who are considered as officers of the court, as the source of such jurisdiction, we find the authorities holding that the "summary power is the exercise of the jurisdiction over an officer of the court as an officer, rather than a regulation of his relative duties as an attorney of a client;" that they are "liable to the summary jurisdiction of the tribunals in which they practice, for any want of good faith and honesty in their relations with their clients;" and that "only questions of good faith and integrity will generally be tried on motion." Weeks on Attorneys, § 77, and authorities there quoted.

The proceeding looks not to the settlement of disputed questions of debit and credit and the obtension of an ordinary judgment for money. It arraigns the attorney, as an officer of the court, for a dereliction of duty, and invokes a summary order of the court commanding him to perform such duty, which he is bound to obey, and, on failure, would be subject to compulsion by such legal pains and penalties as are within the judicial power.

So far is it from the ordinary judicial pursuit that the two are inconsistent with each other. Proceeding by action for the money collected is considered as a waiver of the right to the summary relief. Weeks, § 77, and authorities cited.

If such an action has been commenced, the client must first discontinue before proceeding summarily. Id. § 94, p. 177.

And if the client have proceeded to judgment in an ordinary action for money collected, it operates a merger of the relation of attorney and client into that of debtor and creditor and is a bar to the summary

proceeding for enforcement of payment.   Chevalon vs. Schmidt, 11 Rob. 91; Cottrell vs. Finlay, see 4 How. Pr. 242.

The Supreme Court of the United States, in discussing this remedy, said: "The application against the attorney in such cases is not equivalent to an action of debt or assumpsit, but is a *quasi*-criminal proceeding, in which the question is not merely whether he has received the money, but whether he has acted improperly or dishonestly in not paying it over.   If no dishonesty appears, the party will be left to his action, etc."   *In re Paschal*, 10 Wall. 493.

Under these views of the remedy invoked, it might well be doubted whether on the showing made by the answer and record presenting such serious claims of legal right on the part of defendant, it would not be proper, even without deciding the case on the merits, to discharge the rule and to remit the parties to a litigation of their disputed rights by an ordinary action.   But as such relief is not claimed by defendant on exception or otherwise, we will, on the authority of Furner vs. Walsh, 12 Rob. 283, proceed to adjudicate the issues joined.

I.

So far as the question of the special agreement set up by defendant is concerned, the evidence on the point is voluminous and conflicting. Referring to this conflict, the learned judge *a quo* says: "Mr. Forman testifies positively to a special agreement between himself and the plaintiff corporation, through its officers, that he should be allowed to retain in his hands, and to be paid by preference out of, the proceeds in the damage suit.   His testimony is partially sustained by that of Mr. Wolfson, and fully corroborated by that of a youthful employee of the office.   On the other hand, all the officers of the plaintiff corporation, testify directly to the contrary and deny the existence of any such agreement.   Such a flagrant discrepancy can only be explained on the ground of a misunderstanding between the parties, which it was Mr. Forman's duty as being most interested and more learned in the law, to have obviated by providing that certainty which results from a written instrument."   He, therefore, held that the allegation of special agreement was not proved.   We have studied the evidence on this point with care and do not feel authorized to disturb the ruling thus made by our learned brother.

II.

Defendant, however, claims that, independently of the express agreement alleged, he has, under the showing made and the facts of the case, the legal right to retain and apply the moneys collected to the payment of the fees and charges due him.

It is admitted that the defendant has the right to retain out of the fund his fee in the particular suit in which the money was collected. The question is whether he has the right to retain charges incurred and fees due in other cases. It is claimed, and the judge *a quo* seems to have considered, that the existence of this right depends exclusively on the questions whether the defendant had a privilege on this judgment for fees due in other cases, or whether he has a right to compensate such fees against the fund.

We do not find it necessary to decide either of these questions. The law of privileges finds no place in this controversy, which is one exclusively between the parties. "Privilege," says the Code, "is a right which the nature of a debt gives to a creditor and which entitles him to be preferred before other creditors." No other creditors are before us setting up any rights to be adjudicated herein on this fund; and if the defendant is entitled to hold it against the plaintiff, any rights of the latter's creditors may be left to be asserted by them without predjudice by any decision in this cause to which they are not parties.

Nor do we think that the defendant's right are to be governed by the rules of compensation.

We consider that the questions involved find their solution under the law of Mandate and Attorney and Client.

Some conflict exists amongst civilians as to whether an attorney-at-law is a mandatary or a *locator operarum*, but this Court has recently held that he is a mandatary. Gurley vs. City of N. O., 41 Ann. —.

This case is a peculiar one. All of defendant's services were rendered under a single contract, which we have copied in the beginning of this opinion.

In a suit brought by the predecessor of defendant as attorney of this very Company, for fees due him, an exception was interposed to his petition on the ground that he claimed a certain fee in lump without specifying the amount due in each particular case. The contract proved was similar to the present one; and we said: "Considering that he was employed as counsel of the Company under a general retainer; that the object to be attained by the various services was the single one of maintaining defendant's right to conduct its business in the parish of Orleans; that this was the object and purpose of plaintiff's employment and the services were all subsidiary thereto, we think the plaintiff was justified in treating the whole as substantially one service and claiming a lump consideration therefor."

We cannot take a different view of the services rendered by defendant under his contract. They were all conducive to, or growing out of, the

principal object of the employment. The suit in which the fund in controversy was recoverd, was an action for damages for the wrongful issuance of an injunction in the very suit in which the Supreme Court of the United States finally determined the main question of plaintiff's right (111 U. S. 746) ; and the attorney's-fees therein were an element of the damages claimed.

The defendant had no other source to which to look for payment for his valuable services except to this fund recovered, or to the profits which the Butchers' Union Company might make in the prosecution of its business after its right was established. But it appears that after the decision in its favor, the Crescent City Company made so considerable a reduction in its charges to the butchers, that the Butchers' Union abandoned its competing project. The individual members of the Union thus reaped a substantial advantage from the success of the litigation, and the defendant, by whose exertions this success was achieved, is left without any hope of payment except out of this fund.

The equity of his case is, therefore, very strong; and we think the law is equally clear in his favor. He is plainly entitled to what is known under the English system of common law and equity, as the solicitor's retaining lien.

We quote from Ewell's Evans on Agency as follows: " A solicitor has two kinds of lien : (1.) A *retaining lien*, which is a right to retain possession of another's property until a debt to the solicitor has been satisfied ; (2.) a *charging lien*, which is a right to charge property in the possession of another. · Liens are also divided into general and particular. A particular lien is when the claim arises in respect of the very property claimed. A general lien exists where the debt results from the general balance of account. The retaining lien is *both* particular and general ; whilst the charging lien is only particular. The retaining lien of a solicitor· attaches to all deeds, papers, *money* and chattles in his possession, belonging to his client and which have come into his hands in the course of and with reference to his employment, unless there has been some agreement to the contrary, or unless the right is inconsistent with the solicitor's employment." Ewell's Evans on Agency 497.

The United States Supreme Court says : " In England and in several of the States, it is held that an attorney's or solicitor's lien on papers or money of his client in possession extends to the whole balance of his account for professional services." While not distinctly adopting the rule as applicable to services entirely disconnected with each other, the court fully recognized and enforced its applicability to all services

rendered under the same retainer, though in different proceedings. *In re* Paschal, 10 Wall. 483.

Under the English rule, as stated by Mr. Evans, and by the United States Supreme Court and followed in some States, the right of defendant to retain the general balance of his professional account out of this money sufficiently appears, independently of the solidarity of his employment and services.

It will be seen that the *charging lien* corresponds to what would be called in our law a *privilege* and has been partially regulated by statute in this State. Rev. S. § 128. The *retaining lien*, however, is not statutory in its origin, nor has it been made the subject of statutory provision in this State. It originates in the same inherent power of courts over the relations between attorneys and litigants appearing before them, which is invoked by plaintiff in this very rule. The same power which authorizes courts summarily to enforce the performance by attorneys of their duties towards their clients, intervenes to protect the just rights of attorneys in settlement between them and clients.

We see no reason why such protection should not be extended to their officers by courts of Louisiana as well as elsewhere—particularly in a case where the client invokes the exercise of the summary power. It has certainly been the custom of attorneys to exercise such right of retention, and it seems to have been recognized by this Court in two cases where such retention did not rest on the strict principles of compensation. Mengel vs. Tessier, 5 Ann. 175; Rutland vs. Cobb, 32 Ann. 857.

But considering the solidarity of defendant's contract and services, under the view heretofore expressed, we think that the right, admitted by plaintiff in rule, of defendant to retain his fee in the particular case, extends to and embraces all his fees in the subject-matter of the mandate, and is distinctly supported, not only by the authority of the United States Supreme Court, but by the express text of our own law on that subject. Article 3022 Rev. C. C says: "The principal ought to reimburse the expenses and charges which the ·agent has incurred in the execution of the mandate *and pay his commission where one has been stipulated*," and the Art. 3023, immediately following, declares: "The mandatary has the right to retain out of the property of the principal in his hands, a sufficient amount to satisfy his *expenses and costs*. He may even re*t*ain, by way of offset, what the principal owes him, provided the debt be liquidated."

Taking the two articles together, we have no doubt, at least where the services charged for, have all been rendered under a single mandate,

that the terms *"expenses and costs"* cover the stipulated commissions, salaries or fees, which the first article had just placed on same basis with *"expenses and charges."* These need not be liquidated but enter into the accounting which is due between the principal and agent.

The debts referred to in the final clause of Art. 3023, and which must be liquidated in order to be offset, are obviously debts other than such commissions or fees.

We find no place, in a proceeding like the present, under the views heretofore expressed, for the reconventional demand of defendant, under which he claims a judgment over against plaintiff for an alleged excess of the fees due him over the amount of the fund. We shall not, therefore, undertake the evaluation of those services, further than to say that they are undoubtedly sufficient to offset this fund.

We have designedly ignored those features of this controversy which hinge upon alleged hypothecation of the fund in favor of third persons. Their rights may be remitted to be adjudicated when asserted by themselves.

Our judgment herein will be without prejudice to any rights of such third persons on the fund in controversy. We simply deny the relief sought by plaintiff in rule, to which denial the effect of our judgment will be confined.

It is, therefore, ordered and decreed that the judgment appealed from be annulled and reversed, and it is now ordered and decreed that the rule taken herein be denied and dismissed at plaintiff's cost in both courts.