THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ABRAHAM ABRAHAM and Others, Appellants.

*Sale of medicine by one not a pharmacist — construction of a penal statute made for the public good.*

A sale at retail by a person, a resident of the city of Brooklyn in the county of Kings, who is not registered as a pharmacist, of medicine in bottles having on their labels the stamp of the vendors, and directions as to the size of dose, graduated to suit the age of the person taking it, although such medicine may be in the original packages of the manufacturers and put up in sealed bottles which have not been opened, constitutes a violation of chapter 502 of the Laws of 1879, as amended by chapter 272 of the Laws of 1886, which provides, "it shall be unlawful * * * for any person, unless a registered pharmacist, within the meaning of this act, to open or conduct any pharmacy or store for retailing, dispensing or compounding medicines or poisons."

A penal statute should be construed strictly and not extended by implication; but where the statute is made for the public good, although it be penal, it should receive an equitable construction.

APPEAL by the defendants, Abraham Abraham and others, from a judgment of the County Court of Kings county in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 3d day of August, 1896, affirming a judgment of the Court of Special Sessions of the city of Brooklyn adjudging the defendants

guilty of a misdemeanor in conducting a store for the retailing of medicine, and in having sold medicine without being registered pharmacists or under the immediate supervision of a registered pharmacist.

*Almet F. Jenks* and *Edward M. Grout*, for the appellants.

*Everett Caldwell*, for the respondent.

GOODRICH, P. J.:

The defendants were convicted of having retailed medicines in violation of section 1 of chapter 502, Laws of 1879, as amended by Laws of 1886 (Chap. 272, § 1), which reads : "It shall be unlawful * * * for any person, unless a registered pharmacist within the meaning of this act, to open or conduct any pharmacy or store for retailing, dispensing or compounding medicines or poisons, or for any one not a registered pharmacist or registered assistant pharmacist to prepare physicians' prescriptions, except under the immediate supervision of a registered pharmacist or registered assistant pharmacist in the county of Kings."

Section 6 provides that a registered pharmacist shall not be responsible for the quality of drugs or medicines sold by him in the original packages of the manufacturers, and also those known as "patent medicines ; " and section 8 provides that the act does not apply to the business of wholesale dealers, except as to certain parts not now in question.

Section 9 of the act, as amended in 1886, contains, among other clauses, the further provision that " any person not registered who sells, compounds or dispenses drugs, medicines or poisons, * * * except under the immediate supervision of a registered pharmacist, * * * shall, for every such offense, be deemed guilty of a misdemeanor."

The undisputed evidence shows that the defendants, composing the firm of Abraham & Straus, were engaged in business in a store on Fulton street, Brooklyn, where they had a counter on which were displayed articles known as drugs. In February last, one Cameron purchased at this counter a bottle of paregoric and a bottle of quinine pills, which are medicines, the bottles being corked, sealed and unopened.

At the trial, the prosecution offered in evidence the two bottles which were marked as exhibits, and they were produced before this court on the argument of this appeal.

The labels read as follows:

| PAREGORIC. | 100 |
|---|---|
| For Cough, Pain in the Stomach and Bowels. | SULPHATE |
| | QUININE PILLS, |
| Infants: 1 to 3 mos., 3 to 5 drops; 6 mos., 10 drops; | 2 Gr's. |
| 1 year, 12 drops, in teaspoonful sweetened water. | ABRAHAM & STRAUS, |
| ABRAHAM & STRAUS, | BROOKLYN, |
| BROOKLYN, N. Y. | N. Y. |

The record shows that these exhibits were at first marked for identification only, but at a later stage of the trial they were treated as exhibits, were certified by the police justice to the County Court, went up to the County Court with the papers in the case, and are now in the possession of the clerk of this court. Some question having arisen as to the identity of the bottles, counsel for both parties, at a date subsequent to the argument of the appeal, were requested by the court to appear before it, and it was then conceded by both counsel that the bottles were the ones used at the trial.

It was also conceded on the trial " that the defendants are not registered pharmacists, and that these articles were not sold under the immediate supervision of a registered pharmacist." The prosecution admitted that the bottles were sold by the defendants in the original packages of the manufacturer, and on the argument it was further conceded that these bottles were original packages, not put up by Abraham & Straus. It is not claimed that the defendants " dispensed or compounded any medicine," and the question arising on this appeal is, whether the defendants conducted a store for the retailing of medicines, or sold or retailed medicines, within the meaning and purpose of the statute.

At common law the retailing of medicines was not a crime, and, so far as the city of Brooklyn is concerned, only the statute in question makes the action of the defendants criminal.

The general rule for the construction of penal statutes is that they should be construed strictly, and not extended by implication; but

where the statute is made for the public good, although it be penal, it should receive an equitable construction. In the case of *The People* v. *Bartow* (6 Cow. 291) the act to prevent unlicensed bankers from conducting business was under consideration, and the court, at page 293, said : " Among other things, it is well settled that a statute which is made for the good of the public ought, although it be penal, to receive an equitable construction. (6 Bac. Abr. 391.) When it is considered that this statute was intended to strike at an existing evil, deemed to be of serious injury to the community, it cannot well be doubted that its enactment was to promote the public good."

The case of *Sickles* v. *Sharp* (13 Johns. 497) involved the violation of an act to protect the fishing in the Hudson river, which forbade fishing between sunset on Saturday and sunrise on Monday, and the court held : " The rule that penal statutes are to be construed strictly, when they act on the offender and inflict a penalty, admits of some qualification. In the construction of statutes of this description, it has been often held that the plain and manifest intention of the Legislature ought to be regarded. A statute which is penal to some persons, provided it is beneficial generally, may be equitably construed. " In both these cases the indictment was sustained by an equitable, and not by a strict, construction of the act.

The New York City Consolidation Act of 1882 (Chap. 410, § 2015) uses almost the same language as the statute in question, embodying the words " retailing, dispensing or compounding medicines or poisons." The case of *The People* v. *Rontey* (21 N. Y. St. Repr. 173) was an appeal from a conviction under that act, and the court (at p. 177), in affirming the conviction, said : " The statute was in the nature of a police regulation, aimed at greater safety to the people by by requiring that drugs should be dispensed only by experienced persons, to whom alone that duty should be assigned, and who alone should be permitted to discharge it. The appellant, therefore, was not justified in openly disregarding the provisions of the statute, which required important and substantial forms to be observed before attempting to sell drugs and medicines. Public safety must be regarded as superior to any private rights, and his business must yield to the necessities recognized by proper legislation."

It makes little difference, under these decisions, whether the stat-

ute be construed strictly or equitably, because, under either construc-
tion, the defendants were conducting a store for, and were selling or
retailing medicines, not under the supervision of a licensed or regis-
tered pharmacist, although the medicines were in the " original pack-
ages of the manufacturers."    It is to be observed that this exception
in the 6th section relates only to sales by registered pharmacists and
not to those by general merchants.

The appellants contend that the word " retailing " involves the
opening of the ultimate original package and the dividing of its con-
tents in connection with the ordinary dispensing or compounding of
medicines, and that this word must be interpreted in connection with
the words " dispensing or compounding " on the principle of *nos-
citur a sociis.*    The three words have three separate meanings; at
least, the word " retailing " differs radically in meaning from the
other two words of the collocation, and has additional meaning.
" To retail " is differentiated from " to wholesale," and there can be
no doubt that the selling of one bottle is a clear sale at retail.    The
defendants contend that, while dispensing and compounding require
the experience and skill of a registered pharmacist, the retailing of
medicines in original packages, within the meaning of the whole
statute, implies no necessity for the exercise of similar skill; that
the statute does not relate to such a sale; that section 8 of the
statute provides that it does not apply to, or interfere with, the busi-
ness of wholesale dealers, and that if any other construction of the
act is to be made, we shall be compelled to the logical conclusion
that it is a crime to sell a single bottle of paregoric or quinine in its
original package, although it is no crime to wholesale 100 bottles of
the same medicine.

We cannot agree with this contention.    The manufacture of well-
known and authenticated remedies, prepared under the sanction of a
chemist and physician, is not likely to work any injury to the public,
and the 8th section of the statute was intended to except such
manufactures from the operation of the act.    The general purpose
of the act was to prevent the conducting of stores for the sale of
drugs and medicines, except under the supervision of a registered phar-
macist who had passed an examination as to his skill and capacity,
although even a registered pharmacist was not to be held respon-
sible for the quality of " drugs, chemicals and medicines   *   *   *

in the original packages of the manufacturers," and this is the extent of the exception in that respect. But the sale of medicines, under the circumstances in question, is not within either of the exceptions to the statute. The bottle of paregoric had upon it the different amounts of a single dose for infants of one to three months of age, for those six months and a year, respectively. Surely, this is one of the very practices which the statute had in view, and the Legislature intended to prevent such sales, except by registered pharmacists. An ignorant person purchasing the paregoric might well rely, as it was intended he should rely, upon these directions, and administer the medicine accordingly, and, while the particular directions are probably correct and safe, other medicines of a more dangerous character might be put up and sold in the same manner with directions not safe and not approved by a pharmacist, and thus the statutory province of the pharmacist be usurped to the detriment of the public.

We are, therefore, forced to the inevitable conclusion that the act of the defendants was a clear violation of the statute, and that the judgment of the County Court must be affirmed.

All concurred.

Judgment affirmed.