PEOPLE ex rel. BAUMANN v. LYON, County Comptroller.

(Supreme Court, Special Term, Kings County.   July, 1912.)

1. SHERIFFS AND CONSTABLES (§ 29*)—COMPENSATION—STATUTES.

Under Agricultural Law (Consol. Laws 1909, c. 1) § 96, as amended by Laws 1911, c. 255, providing for regulations as to diseases of animals and the enforcement thereof by the sheriff, and that in all counties the expenses incurred by the sheriff, undersheriff, or deputy sheriff in carrying out and enforcing the provisions of any notice, order, or regulation of the commissioner shall be a county charge, to be paid as other charges, including in this requirement any county affected by local or special acts relating to the sums payable by the county for compensation or disbursements or both, the amendment which consisted of the clause commencing, "including in this requirement," did not change the term "expenses incurred by the sheriff, or under or deputy sheriff," so as to include the compensation of those officials.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 46; Dec. Dig. § 29.*]

2. COUNTIES (§ 165*)—WARRANTS—COMPTROLLER—DUTIES.

Under County Law (Consol. Laws 1909, c. 11) § 235, providing that the comptroller shall superintend the fiscal affairs of the county pursuant to law, and the resolutions of the board of supervisors, the county comptroller is not a mere ministerial officer, and should not countersign and approve warrants drawn for illegal purposes.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 246–248; Dec. Dig. § 165.*]

3. STATUTES (§ 161*)—CONSTRUCTION.

Where at the same session the Legislature passes acts affecting the same subject-matter which are contradictory in terms, the latter act governs, but the two acts should, if possible, be construed so that both may take effect.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 230–234; Dec. Dig. § 161.*]

4. COUNTIES (§ 69*)—OFFICERS—COMPENSATION—STATUTES—CONSTRUCTION.

County Law (Consol. Laws 1909, c. 11) § 5, as amended by Laws 1911, c. 359, provides that the boards of county supervisors shall have power to fix the amount, time, or manner of payment of the salary or compensation of any county officer or employé, except a judicial officer. Agricultural Law (Consol. Laws 1909, c. 1) § 96, as amended by Laws 1911, c. 255, which was enacted only a few days prior thereto, relating to regulations and their enforcement for the suppression or prevention of the spread of diseases of animals, gives to the commissioner of agriculture power to appoint officers to enforce regulations, or to require the sheriff to do so. Held that, as the two laws were to be construed together, one appointed deputy sheriff for the enforcement of regulations for the prevention of rabies is entitled to his compensation where the board of county commissioners approved of his claim for compensation, though they had not appointed him.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 104–115; Dec. Dig. § 69.*]

Application by the People, on the relation of Henry Baumann, for a writ of mandamus directed against John Lyon, as Comptroller of the County of Nassau. Peremptory writ issued.

Felix Reifschneider, Jr., for petitioner.
John Lyon, pro se.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BENEDICT, J. This is an application for a peremptory writ of mandamus, directed to Hon. John Lyon, as comptroller of the county of Nassau, directing him as such comptroller forthwith to countersign and approve for payment the order or warrant for $183 drawn by the clerk of the board of supervisors and countersigned by the chairman of said board, so that the claim of the petitioner for the services hereinafter mentioned may be paid by the treasurer of the county of Nassau.

There is no dispute as to the facts involved in the application, and they may be summarized as follows:

Some time in the latter part of the last, and in the early part of the present, year, the commissioner of agriculture of this state established a quarantine in the several towns of Oyster Bay, North Hempstead, and Hempstead, all in Nassau county, on account of the existence therein of the disease known as "rabies." This quarantine was the result of complaints which had been lodged with the commissioner of agriculture both by private individuals and local authorities and of examinations and investigations conducted under the authority of the commissioner. Upon the 1st day of February, 1912, the relator was appointed by the sheriff of the county of Nassau a special deputy sheriff, to act as an inspector of quarantine during the pleasure of the sheriff, in the town of North Hempstead, with other persons similarly appointed. The compensation of the relator was stipulated by the sheriff to be at the rate of $3 a day for each and every day while such employment should continue. Such agreement was, however, not specified in writing in the appointment, but rested in parol. The relator, it is admitted, performed services as inspector of quarantine in said township from the date of appointment until the 31st day of May, 1912. He received payment of the sum of $87 for 29 days' service in February, but nothing for the 31 days in the month of March, for which he claims $93, and nothing for the 30 days in the month of April, for which he claims $90, making up the total claim now in dispute of $183. It appears that he presented these two claims to the sheriff of Nassau county, who approved them for payment, and they were, after approval by the civil service commission, transmitted to the respondent, who on May 23, 1912, examined them and disapproved their payment. The claims were thereupon presented to the board of supervisors of Nassau county and approved and allowed by all three of the members of said board on June 3, 1912. Notwithstanding such approval, however, the respondent refused to countersign the warrant for such payment which had been drawn pursuant to statute by the clerk of the board of supervisors and countersigned by its chairman. I am of opinion that the refusal of the comptroller to countersign the said warrant is unauthorized for the reasons given in the second part of this memorandum. The respondent in his answering affidavit filed in this proceeding places his refusal first upon the ground that the claim is not a proper county charge, because the sheriff of Nassau county had no authority to employ the relator to perform the services rendered by the relator as specified in his claims, and this, he contends, is so, because, to quote

his statement, the claims of the relator are not for "expenses incurred" in enforcing the provisions of any notice, order, or regulation issued by the agricultural department of the state, but said claims show on their face that claimant is charging for "picking up dogs," "shooting dogs," and "burying dogs" at the fixed money rate of· $3 a day. He also urges the further ground of objection that the board of supervisors alone has the power under the County Law, as amended in 1911, to fix the salary or compensation of all county officers and employés, except judicial officers.

[1, 2] Examining these contentions in the order of their statement, we find that the Agricultural Law, constituting chapter 1 of the Consolidated Laws, as amended by chapter 352 of the Laws of 1909 and chapter 437 of the Laws of 1910, and by chapter 255 of the Laws of 1911, provides as follows:

"Sec. 96. Regulations, the enforcement thereof and expenses incurred by sheriff. The commissioner may prescribe such regulations as in his judgment may be thought suited for the suppression or the prevention of the spread of any such disease, and for the disinfection of all premises, buildings, railway cars, vessels, and other objects from or by means of which infection or contagion may take place or be conveyed. He may alter or modify, from time to time, as he may deem expedient, the terms of all notices, orders and regulations issued or made by him, and may at any time cancel or withdraw the same. He may call upon the sheriff, under sheriff or deputy sheriff, to carry out and enforce the provisions of any notice, order or regulation which he may make, and all such sheriffs, under sheriffs and deputy sheriffs shall obey and observe all orders and instructions which they may receive from him in the premises. In all counties, the expenses incurred by the sheriff, under sheriff or a deputy sheriff in carrying out and enforcing the provisions of such notice, order or regulation shall be a county charge, to be audited and paid in the same manner as other charges by the sheriff, under sheriff or deputy sheriff, including in this requirement any county affected by a local or special act relating to the sums payable by the county for compensation or disbursements, or both, to its sheriff, under sheriff or any deputy sheriff; and no such local or special act shall be effectual to prevent the payment of the expenses herein made a county charge over and above any other sum or sums, fixed or otherwise, provided in such act to be paid by the county to the sheriff, under sheriff or deputy sheriffs for compensation or to cover expenses, or both, and notwithstanding any provision of any such act relieving the county from charges imposed by law which are incurred by its sheriff, under sheriff or a deputy sheriff."

Under the provisions of the statute as it existed prior to the amendment of 1911, there would appear to be much force in the respondent's contention regarding the effect of the words "expenses incurred," as they then stood in the statute, and as applied to claims for services like these. Prior to the amendment of 1911, the statute did not contain the words from "including in this requirement" to the end of the quotation above given, and the relator contends that since this amendment was made his compensation comes within the term "expenses incurred."

I think that it is very doubtful whether it was the purpose and object of this amendment to indicate the legislative intention to make compensation as well as disbursements payable by any county to its sheriff, undersheriff, or any deputy sheriff employed under the provisions of this act in cases where the compensation was for the claim-

ant's own services.  The words "expenses incurred" are hardly broad enough to cover the per diem compensation claimed by persons specially deputized by a .sheriff to enforce the provisions of the Agricultural Law in a quarantine district established by the commissioner of agriculture, unless the claim were made on behalf of the sheriff himself or undersheriff who had employed and personally paid deputies or other persons for this particular class of work.  The phrase "expenses incurred," considered apart from any context, does not express the idea of compensation earned, for, strictly speaking, an "expense" signifies something—usually money—paid out or disbursed, and "incur" means to assume, contract for, or become liable or subject to through one's own action; as e. g., an obligation or liability. To use the two words to convey the meaning of an obligation for compensation for services which either has been or will be met and satisfied is incorrect, yet such a meaning has been attached in more than one instance to them.  The word "expense" has been loosely held to include, not only moneys disbursed at irregular intervals in payment of charges or outlays of various sorts, but also payments made at stated times and as compensation for services rendered.  See Dunwoody v. U. S., 22 Ct. Cl. 269, 278; Sullivan v. Triunfo G. & S. Min. Co., 39 Cal. 459, 467; Hall v. Vermont & M. R. Co., 28 Vt. 401, 408; Attorney General v. Union Soc., 116 Mass. 167; Butchers' U. S., etc., v. C. C., etc., Co., 41 La. Ann. 355, 6 South. 508; Ball v. Vason, 56 Ga. 264–267, par. 3; Regina v. Gloucester, 5 Q. B. 862, 871.

Notwithstanding these authorities, I believe the better rule to be that stated in the following cases, and these and the foregoing are all that the time at my disposal has enabled me to find:

In Regina v. Kingston upon Hull, 2 Ell. & Bl., 182, where the town clerk sought to charge the overseers of the poor for the duties which he performed in respect of the registration of parliamentary voters of a borough, under a statute which required the parish officers to repay to him his "expenses incurred," it was held by the Queen's Bench that these words did not apply to remuneration for his labor.  Lord Campbell said:

"We would make the rule absolute, if there were any doubt, as to have a return.  But there is not a particle of doubt.  'Expenses incurred' means simply money which the town clerk has had to pay.  He wants to charge for his time.  No doubt he has been very usefully employed; but that is not incurring an expense."

The other judges agreed with him.  In that case the claim was for personal services rendered by the town clerk.  It did "not appear that he had had to hire any clerk for this specific service."  See, also, Jones v. Borough of Carmarthen, 8 Moos. & W. 605, 614; Foster v. Goddard, 1 Black, 506, 17 L. Ed. 228; Kane v. Schuylkill F. Ins. Co., 199 Pa. 205, 48 Atl. 989.  The same principle was applied by the Appellate Division, Third Department, in People ex rel. Caldwell v. Supervisors, 45 App. Div. 42, 49, 60 N. Y. Supp. 1122, 1127, where it was held that the board of supervisors "have no power or authority to audit or allow any claim or bill against the county

which is not a legal charge. They cannot be liberal or generous with the money of the people. They can only expend it to pay the county's legal debts or obligations. * * * The board of supervisors has no power or authority to compensate him [the sheriff] for his care and trouble in looking after the prisoners, or in feeding them, but only for the money he has actually expended." This seems to me to be the true rule both from a legal standpoint, and as giving to the word "expense" its usual and appropriate signification, and so I feel constrained to hold that the refusal of the county comptroller, based upon this ground, to approve the warrant was justified in law.

Were there nothing more in this case, I should sustain him in his refusal, notwithstanding the approval of the claim by the board of supervisors, because, as I read the provisions of the County Law (Consol. Laws 1909, c. 11) relative to the duties and functions of the county comptroller, it appears plain that the comptroller is not, as the relator's argument would make him, a mere figurehead or rubber stamp wholly under the control of the board of supervisors. By section 235 it is provided:

"The comptroller shall superintend the fiscal affairs of the county pursuant to law and the resolutions of the board of supervisors."

If he were to blindly certify as correct and approve for payment in a purely ministerial capacity as directed by the board of supervisors all claims which the board should approve, the words "pursuant to law" were better omitted from the statute, since they would lose their force and effect, and the clerk of the board of supervisors and its chairman could as well sign the warrants when ordered to do so by the board without giving the comptroller the labor of attaching his signature. Doubtless some of the duties of the county comptroller are ministerial, but, when deciding upon the validity of claims against the county, he is charged with judicial, rather than with ministerial, functions.

To conclude this branch of the case, then, I think that the amendment of 1911 did not operate to enlarge the meaning of the phrase "expenses incurred" so as to include compensation for services rendered personally by the claimant, but that, under either statute, they would include compensation paid by a sheriff, undersheriff, or deputy sheriff to other persons for services rendered to the officer making the payment, when such persons were duly employed pursuant to the provisions of the Agricultural Law, and that the sole object of the amendment of 1911 was to make it possible to collect such "expenses" by an officer making them even "in any county affected by a local or special act relating to the sums payable·by the county for compensation or disbursements or both to its sheriff, undersheriff or any deputy sheriff, notwithstanding that without this amendment such payment could not lawfully be made."

Turning now to the second branch of the case, I find myself unable to agree with the position taken by the respondent.

[3, 4] The second ground of objection stated in the answering affidavit was not argued at the bar, but is decisive of this application. It

is that under the provisions of the County Law the alleged agreement between the sheriff and the relator that the relator should receive compensation for his services at the rate of $3 a day is in violation of the statute because not made by the board of supervisors. The County Law as well as the Agricultural Law was amended by the Legislature of 1911. Chapter 359, amending the County Law in relation to the powers of the boards of supervisors, became a law on June 16, 1911, just 10 days after the amendment to the Agricultural Law which has already been considered. By this act subdivision 5 of section 12 of chapter 16, Laws of 1909, known as the "County Law," is amended so as to read as follows in the enumeration of the powers of boards of supervisors:

"5. Have power to fix the amount and the time or manner of payment of the salary or compensation of any county officer or employé, except a judicial officer and the mode of appointment, number and grade of the clerks, assistants or employés in any county office, notwithstanding the provisions of any general or special law fixing the amount of such salary or the time or manner of payment thereof, or providing for the mode of appointment, number or grade of the clerks, assistants or employés in any county office, or vesting in any other board, body, commission or officer authority to fix the amount of such salary or compensation or the time or manner of payment thereof or to provide for the mode of appointment, number or grade of the clerks, assistants or employés in any county office; and the power hereby vested in the board of supervisors shall be exclusive of any other board, body, commission or officer, notwithstanding any general or special law. · The salary or compensation of an officer or employé elected or appointed for a definite term shall not be increased or diminished during such term."

In my opinion this provision in relating to the powers of the board of supervisors is not inconsistent with or repugnant to the provisions of the Agricultural Law above quoted. Where the Legislature at the same session passes two acts affecting the same subject-matter which are contradictory in terms, the later act will be preferred as expressing the later judgment of the Legislature, but, if both can be construed so as to give effect to each, that construction should be adopted. The object of statutory construction in such a case is to ascertain the legislative will, so as to give effect to both statutes, if possible.

The amendment of the County Law declares that the board of supervisors shall "have power to fix the amount and the time or manner of payment of the salary or compensation of any county officer or employé except a judicial officer."

In the written appointment or employment of the relator by the sheriff there is no attempt made to fix his compensation at $3 a day, although there is said to have been a verbal agreement between them to that effect. The appointment, as I view it, was made subject to the right of the board of supervisors to fix the compensation at some other amount greater or less than $3 a day, and, had the board chosen to fix it at $1 or $2 a day, the relator would have had no remedy against the county, whatever might have been his right to recover against the sheriff himself upon his verbal contract. But, as has been noted, the board of supervisors has by unanimous vote ap-

proved the relator's claim, and thereby "fixed the amount and the time or manner of payment of the salary or compensation" of the relator at the sum of $3 a day. The statute does not require the "fixing" to be at or before the appointment, and the relator was not appointed for a definite term during which his salary or compensation could not be increased or diminished. I think the county must pay him for his services at the rate fixed by the board on June 3, 1912. If there were any doubt in my mind as to the correctness of this conclusion, though there is none, it would be resolved in favor of such a construction as will tend to effectuate the provisions of the Agricultural Law, and give to its provisions an equitable rather than a strict and literal construction upon the principle laid down by Mr. Justice Robson in People v. Bellinger, 145 App. Div. 141, at page 144, 129 N. Y. Supp. 92, at page 95, where, in speaking of the Agricultural Law, he said:

"It cannot well be doubted that this statute was intended to promote the safety and well being of the public and of the property of persons owning domestic animals. Enactments having such a purpose have generally been accorded an equitable construction; i. e., a construction which will give effect to the clear purpose of the statute rather than one which will nullify it, if the language used permits such a construction. People v. Abraham, 16 App. Div. 58 [44 N. Y. Supp. 1077]."

The legislative purposes in enacting the Agricultural Law to confer ample powers upon the commissioner of agriculture for carrying its provisions into effect for the general welfare of the community is quite evident. No suggestion is made in this case that the powers so conferred transcend the constitutional right of the Legislature in respect of the police power, and it is clear that, if the Legislature had the right to vest these powers in the commissioner, it also had the right to direct the manner of his exercise of them, and to furnish him with suitable means and agencies for such exercise. The intent being plain and not unlawful, the courts should give to the act such a construction, if possible, as will save and not defeat the desired result, and to this end they should harmonize other legislative acts which by being given too strict a construction might frustrate the provisions of the Agricultural Law. If I am correct in the conclusions thus stated, the two statutes may and should be read together, and, when so read, the following rules may be deduced to govern cases where similar questions arise under the Agricultural Law, viz.: (1) Where the claim is made by a sheriff, undersheriff, or deputy sheriff, without the approval of the claim by the board of supervisors, it is limited to and can be approved only for moneys paid out or "expended" by such claimant to other persons and not for the compensation of the claimant himself. (2) Where the claim is for compensation for the services of a claimant who has been duly appointed under the Agricultural Law by the sheriff, undersheriff, or any deputy sheriff, and such compensation has been "fixed" by the board of supervisors as provided in the County Law, the claim for compensation becomes a valid claim against the county.

The fact that the questions herein discussed are of general applica-

tion throughout the state, and that other claims, similar to those here involved, are dependent on the issue of this proceeding, must be my excuse for the length of this memorandum.

The application will be granted, but, as the questions are novel, without costs. Settle order on notice.