**In re SUTTON INVESTMENTS, INC., Debtor.**

**In re Robert B. SUTTON, Debtor.**

**Bankruptcy Nos. 484–00439–LO–11, 484–00438–LO–11.**

United States Bankruptcy Court, W.D. Louisiana.

Aug. 1, 1985.

Charles N. Wooten, Charles N. Wooten, Ltd., Lafayette, La., for movant.

Robert P. Brenham, Lafayette, La., for trustee.

Hugh Wm. Thistlethwaite, Jr., Opelousas, La., Trustee.

## FINDINGS AND CONCLUSIONS

RODNEY BERNARD, Jr., Bankruptcy Judge.

This matter is before the court on the motion of Charles N. Wooten, Ltd., A Professional Law Corporation, requesting relief from the automatic stay in order to allow it to exercise a claimed right of set-off against the above-named estates. The matter was originally fixed for hearing on May 13, 1985; and instead on that date, at the urging of counsel, the court ordered the matter submitted on stipulated facts and written briefs.

*Facts:*

The facts as stipulated are as follows:

1.

Charles N. Wooten, Ltd., A Professional Law Corporation, represented the debtors, Robert B. Sutton and several of the corporate entities controlled by Mr. Sutton, during the calendar years 1978 through 1981.

2.

Charles N. Wooten, Ltd. performed legal services and incurred expenses for and on behalf of the debtor, Robert B. Sutton, as well as certain corporate entities during the period of representation, and would customarily bill for said services and costs on a monthly basis.

3.

The debtor caused payment to be made on such billings of Charles N. Wooten, Ltd. on a monthly basis until November, 1981.

4.

On or about November 2, 1981, Charles N. Wooten, Ltd. posted a cash appearance

bond in the amount of $10,000.00 with Honorable Jack C. Silver, Clerk of the United States District Court for the Northern District of Oklahoma. The appearance bond was posted in a matter entitled "United States of America vs. Robert B. Sutton" bearing Criminal Docket No. 81–CR97E on the docket of said Court, and Charles N. Wooten, Ltd. was given a receipt for said bond, having posted the same from its funds.

5.

On or about November 20, 1981, Charles N. Wooten, Ltd. had completed a settlement and collection of a claim for an entity controlled by Mr. Sutton and in accordance with the authority vested in it, disbursed all funds from the settlement, including payment of all legal fees and costs rendered and billed through September 30, 1981, and additionally, the sum of $10,-000.00 representing reimbursement of the bond money posted for the debtor, Robert B. Sutton.

6.

The debtor, Robert B. Sutton, did not receive nor did Charles N. Wooten, Ltd. grant any oral or written subrogation to the bond proceeds held by Honorable Jack Silver, Clerk of the United States District Court for the Northern District of Oklahoma.

7.

At the time the disbursements were made by Charles N. Wooten, Ltd., namely November 20, 1981, the imputation of payment was designated on each check disbursed from the proceeds and in part reflect the following:

(a) Trust fund check from Charles N. Wooten, Ltd. to Charles N. Wooten, Ltd., General Account in the amount of $18,-857.14, dated November 20, 1981 indicating reimbursement of Cliffy Broussard note.

(b) Trust fund check from Charles N. Wooten, Ltd. to Charles N. Wooten, Ltd., General Account in the sum of $14,396.15 dated November 20, 1981 representing September billing, BPM, Ltd.

(c) Check from Trust Account of Charles N. Wooten, Ltd. payable to Charles N. Wooten, Ltd. General Account in the amount of $3,633.90 dated September 20, 1981 designating payment of September billing, Sooner Refining Co.

(d) *Trust fund check of Charles N. Wooten, Ltd., payable to Charles N. Wooten, Ltd., General Account in the sum of $10,000.00 dated November 20, 1981 representing reimbursement of cash bond.*

(e) Trust fund check of Charles N. Wooten, Ltd. payable to Blue Ridge Refining Co., Inc. in the sum of $1,801, 279.80 dated November 20, 1981 and designating net proceeds from Martin Exploration settlement.

(f) Trust fund check from Charles N. Wooten, Ltd. payable to Blue Ridge Refining Co., Inc. in the sum of $126,975.12 dated November 20, 1981 designating balance of September payment from Martin Exploration Co., Inc.

8.

Charles N. Wooten, Sr., if called to testify, would verify that the billing procedure for Mr. Robert B. Sutton, as well as other entities controlled by him, were compiled on a monthly basis and were generally rendered at the end of one month for the previous month's work. On November 20, 1981, the billing for all services and costs incurred in representing the debtor during the month of October, 1981, had not yet been compiled nor rendered. Legal services and costs continued to be incurred on behalf of Robert B. Sutton by Charles N. Wooten, Ltd., throughout the months of October, November, December, all of 1981, and into January, 1982, whereupon the services of Charles N. Wooten, Ltd. were terminated due to irreconcilable differences between attorney and client.

Charles N. Wooten, Sr. would further identify copies of the then existing business records of Charles N. Wooten, Ltd., copies of which are annexed hereto and

made a part hereof and identified as follows: [1]

(P-1) Copy of handwritten ledger card maintained for BPM, Ltd. and Robert B. Sutton.

(P-2) Copy of detailed itemized statement of services and costs rendered for Robert B. Sutton and/or his controlled entities for the month of October, 1981.

(P-3) Copy of detailed itemized statement of services and costs rendered for Robert B. Sutton and/or his controlled entities for the month of November, 1981.

(P-4) Copy of detailed itemized statement of services and costs rendered for Robert B. Sutton and/or his controlled entities for the month of December, 1981.

(P-5) Copy of detailed itemized statement of services and costs rendered for Robert B. Sutton and/or his controlled entities for the month of January, 1982.

Charles N. Wooten, Sr. would further testify that the billings were made at the direction of Mr. Robert B. Sutton, with copies being sent to Mr. Anthony P. Sutton, 114 East Eighth Street, Suite 400, Tulsa, Oklahoma, 74119 per Mr. Sutton's request.

9.

Neither BPM, Ltd. nor Robert B. Sutton, nor any corporate entity controlled by him, nor the debtor, Sutton Investments, Inc., ever paid any of the aforesaid invoices and statements, and in fact did not list Charles N. Wooten, Ltd. as a creditor in any of the schedules filed in these proceedings.

10.

Charles N. Wooten, Ltd., after being contacted by the Clerk of the United States District Court for the Northern District of Oklahoma, advising it that all conditions of the bond posted by Charles N. Wooten, Ltd. had been fulfilled, filed a motion with said Court for return of the bond in the

sum of $10,000.00. Charles N. Wooten, Ltd. did receive the aforesaid funds on April 8, 1985 which were deposited in its Trust Account, pending the outcome of the instant motion to determine ownership of said funds;

And I so find. I will here make one further factual finding based upon the above stipulation, this regarding the stipulated testimony of Charles Wooten. This testimony when taken together with the supporting documents and exhibits submitted indicate that the lawfirm was owed an amount from debtor, Robert Sutton, far in excess of the $10,000.00 it now seeks to set-off. Further it shows that those amounts were owed a long time prior to the filing of bankruptcy. Realizing the self-serving nature of the testimony, it is perhaps not the best of proof to be sure; nevertheless, the trustee, while not admitting to the testimony has on the other hand, made no serious attempt to refute it either by argument, pleadings or testimony to the contrary. Accordingly, and having no need to go any further for present purposes, I find that the mover is owed a debt by Mr. Sutton in excess of $10,000.00 and that the debt was incurred well prior to ninety (90) days before the filing of the petition.

DISCUSSION:

I. *Is this property of the estate:*

■ The mover has suggested that the initial bond transaction was a contract between the lawfirm and the Oklahoma clerk of court to which Mr. Sutton was not a party. Although conceding to the imputation that later occurred, it contends that no right of subrogation to the bond was thereby granted. Consequently, the mover maintains that Mr. Sutton did not obtain any ownership interest in the bond. The mover argues that the bond and its pro-

---

**1.** These exhibits are, by the effect of the stipulation, made part of the record. No purpose would be served in their reproduction here. In the aggregate the mover asserts that they show an outstanding debt owed by Robert Sutton and his corporate entities to the law firm in the amount of $73,681.59 as of the date the firm's services were terminated. Of that total the mover has argued that the sum of $18,571.99 was outstanding at the time imputation occurred.

ceeds are not properly property of the estate. In response, the trustee argues that this was a "loan for consumption" [2] and according to the applicable Louisiana law the bond was the property of Mr. Sutton from the time the loan was made, citing L.S.A. *C.C. 2910, 2911.* [3]

### Mandate;

The court finds neither of these arguments to be accurately descriptive of the subject transaction. Mr. Wooten was not buying a bond for himself nor was he making a "loan for consumption". Instead, as an attorney and agent for his client, Robert Sutton, he advanced money to purchase the bond for his client. In other words the trustee is correct but for the wrong reason. This is property of the estate. The importance of this distinction however is that the transaction and the relationship from which it flows is governed not by the civil code articles treating "of loan" but instead by the civil code articles treating "of mandate". L.S.A. *C.C. 2985* et seq. This will take on added significance as we are soon to discover.

### II. *Is set-off available:*

11 U.S.C. 553 generally allows for a limited right of set-off in bankruptcy. That section does not, however, create the right but merely preserves, in certain instances, the right as it would otherwise have existed outside of bankruptcy, 4 *Collier* 553.02 (15th ed.). To clarify, there must first exist some state law or common law right of set-off for Section 553 to be triggered.

Looking to the instant facts, Louisiana law provides that the principal is obligated to his mandatary for all advances, charges, expenses and agreed upon fees he has earned or incurred during the term of the mandate. L.S.A. *C.C. 3022* 'a pari' *3025.* Further, and of extreme interest here, the Civil Code gives the mandatary the rights of retention and set-off against property of the principal in order to enforce payment of this debt. L.S.A. *C.C. Art. 3023.*

*Compensation of mandatary out of property in his hands*
Art. 3023. The mandatary has a right to retain out of the property of the principal in his hands, a sufficient amount to satisfy his expenses and costs.

*He may even retain, by way of offset, what the principal owes him, provided the debt be liquidated.* (Emphasis added)

In construing these provisions one Louisiana court faced with a very similar fact situation has commented:

In *Butchers' Union Slaughter-House & Live-Stock Landing Co. v. Crescent City Live-Stock Landing & Slaughter-House Co.*, 41 La.Ann. 355, 6 So. 508 (La.1889), our early Supreme Court analyzed the right of an attorney to funds placed in his hands in the common law terms of a "solicitor's retaining lien".

**2.** If this was a loan at all it is more properly classified as a "loan for use or commodatum" L.S.A. *C.C. 2893* et seq. There was never an intention that the $10,000.00 would be "consummed" as envisioned by *Articles 2910* et seq. To the contrary, it was always intended that the money would be returned once its purpose of assuring Mr. Sutton's appearance had been accomplished.
The court's own reading of these Code Articles is that consumption is 'sine qua non' of the transfer of ownership provisions to which the trustee points. Cf. the "loan for use" articles (infra) which specifically state that ownership remains with the lender.

**3.** Art. 2910. Loan for consumption, definition
*Art. 2910.* The loan for consumption is an agreement by which one person delivers to another a certain quantity of things which are consumed by the use, under the obligation, by the borrower, to return to him as much of the same kind and quality.
Art. 2911. Ownership of thing lent
*Art. 2911.* By the effect of this loan the borrower becomes the owner of the thing lent, and if it be destroyed, in whatever manner the same may have happened, the loss is on his account. Cf.:
Art. 2893. Loan for use, definition
*Art. 2893.* The loan for use is an agreement, by which a person delivers a thing to another, to use it according to its natural destination, or according to the agreement, under the obligation on the part of the borrower, to return it after he shall have done using it.
Art. 2895. Ownership of thing lent
*Art. 2895.* The lender remains proprietor of the thing lent.

Under the common law, there are two kinds of attorneys' liens: (1) a charging lien, the right to compensation for services from the funds or judgment which the attorney has recovered for the client because of his professional services rendered and (2) a retaining lien, the right to retain possession of a client's documents, money, etc., until paid for his professional services. 7 C.J.S. *Attorney and Client* § 207 et seq. (1937).

The right of retention has also been recognized in the civil law and extended to mandataries or administrators of affairs for expenses incurred on behalf of another. Planiol, *Civil Law Treatise* (An English Translation by the Louisiana State Law Institute), vol. 2, no. 2514 et seq. Louisiana has provided for both the charging lien and retaining lien under *L.S.A. R.S. 9:5001* and *L.S.A.–C.C. arts. 3022* and *3023*[2] *L.S.A.—R.S. 9:5001* embodies the same characteristics and effects as that of a charging lien in the common law and under *L.S.A.–C.C. arts. 3022* and *3023* interpreted in pari materia by the court in *Butchers' Union,* supra, establishes the retaining lien for the attorneys' fees. Appellant argues that for the attorneys' fees to be set-off, they must be liquidated prior to the garnishment. We disagree. In *Butchers' Union,* supra, the court's interpretation of *L.S.A.–C.C. art. 3023* states that: "The debts referred to in the final clause of article 3023, and which must be liquidated in order to be offset, are obviously debts other than such commissions or fees". *Bd. of Trustees, Etc. v. All Taxpayers,* 361 So.2d 292, 295 (La.App. 1st Cir.1978).

Thus it is clear to this court that the mover would have a right of set-off under the applicable Louisiana law.

▮ In order to claim this right under Section 553 however the mover must generally show three additional things: (1) that the debts are mutual, (2) that they were both incurred prior to filing and (3) that they are held in the same capacity, *Collier* id., 553.18. The trustee however would have the court insist upon yet another re-quirement, namely: that the claiming creditor must have first filed a proof of claim. Interestingly, the noted bankruptcy authority and Judge, Keith M. Ludin, in a recent case took up this very subject commenting as follows:

▮ The court rejects the trustee's assertion that Columbia's failure to file proofs of claim against Fulghum's estate precludes any setoff by Columbia. Section 553(a)(1) provides that a creditor otherwise entitled to setoff under § 553(a) may not set off its claim against the debtor to the extent its claim "is disallowed other than under § 502(b)(3) of this title". Section 553 does not contain a requirement that a creditor seeking to exercise a setoff must first file a proof of claim. Neither is such a prerequisite contained in § 542—the section under which the trustee proceeds in this case. The process of disallowing a claim is controlled by 11 U.S.C.A. § 502 (West 1979). Disallowance is initiated by the filing of an objection by a "party in interest". No objection to Columbia's claim has been filed in this case. To the extent that § 502 contemplates the filing of a proof of claim before a party files an objection, § 501 provides that the debtor or the trustee may file a proof of claim on behalf of a creditor who has not itself timely filed. 11 U.S.C.A. § 501(c) (West 1979).[15] The trustee in this case has initiated no procedure to attack Columbia's claim. Columbia's claim has not been disallowed. Section 553(a)(1) is thus not a bar to setoff by Columbia.

The parallels to the instant facts should be readily apparent. Additionally, I find Judge Ludin's observations to be both clear and eminently correct and therefore, without the need of further analysis, adopt them as my own.

CONCLUSION:

To reiterate and sum, I find:

1. The debtor, Robert Sutton, owes the mover a debt in excess of the $10,000.00 and the mover seeks to set-off.

2. The mover owes the debtor a debt of $10,000.00 from the bond proceeds it now holds and for which the debtor has previously reimbursed it.

3. Both debts were incurred well prior to ninety (90) days before the filing of the voluntary bankruptcy petition.

4. Outside of bankruptcy the mover would have had a right under Louisiana law to set-off the $10,000.00 claim.

I further find that this property has not been shown to be needed for the effective reorganization of this estate and that the debtor and/or trustee has failed to make any offer or suggestion of adequate protection.

Accordingly, it is the determination of the court that judgment shall be for the mover, Charles N. Wooten, Ltd., modifying the automatic stay and allowing the mover to exercise its right of set-off.

A separate judgment in accordance with the foregoing shall be duly signed and entered upon submission by the mover, Charles N. Wooten, Ltd.