**In re KAISER STEEL CORP., et al., Debtors.**

**KAISER STEEL CORP., et al., Plaintiffs,**

v.

**Joseph A. FRATES, et al., Defendants.**

**KAISER STEEL CORP., et al., Plaintiffs,**

v.

**Monty RIAL, et al., Defendants.**

**Civ. A. Nos. 89–K–635, 89–K–837. Bankruptcy No. 87 B 1552 E.**

United States District Court, D. Colorado.

Jan. 16, 1990.

rick & Stan P. Doyle and Perma–Frates Joint Venture.

Douglas M. Schwab, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., Darrell Waas, Otten, Johnson, Robinson, Ness & Ragonetti, Denver, Colo., for Richard N. Gary and Stephen A. Girard.

I. Thomas Bieging, Morrato, Bieging, Burris & Colantuno, Englewood, Colo., for Miles B. Yeagley.

Douglas M. Tisdale, Brownstein, Hyatt, Farber & Madden, Denver, Colo., Frank S. Mosley, Davis, Polk & Wardwell, New York City, Jerome G. Snider, Davis, Polk & Wardwell, Washington, D.C., for Donaldson, Lufkin & Jenrette.

Joseph Giroir, Little Rock, Ark.

Todd E. Gordinier, Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., William G. Imig, Ireland, Stapleton, Pryor & Pascoe, Denver, Colo., for Dean Witter.

Theresa J. Collier, Holland & Hart, Denver, Colo., for Clifford V. Brokaw, III.

Richard P. Slivka, David L. Dain, Vinton, Slivka & Panasci, Denver, Colo., for Charles S. McNeil, Monty H. Rial and Perma–Frates Joint Venture.

Robert E. Darby, Reavis & McGrath, Los Angeles, Cal., and Ronald G. Rossi, Rossi, & Judd, Denver, Colo., for William R. Gould and Howard P. Allen.

Joseph M. Mole, Simon Harter, New Orleans, La.

William D. Treeby, Barry W. Ashe, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., and William H. Haring, Bostrom, Haring & Hitt, Denver, Colo., for Lloyd G. Hansen.

Robert M. Duitch, Duitch & Johnson, Colorado Springs, Colo.

J. Michael Morgan, Lohf, Shaiman & Ross, Denver, Colo.

Alan L. Bugg, Colorado Springs, Colo., for Calder & Co., et al., and Perma Pacific Properties.

Thomas English, English, Jones & Faulkner, Tulsa, Okl., Morton G. Rosen, Haight, Brown & Bonesteel, Santa Monica, Cal., John D. Phillips, Hall & Evans, Denver, Colo., for Charles H. Black.

H. Thomas Coghill, David J. Richman, Coghill & Goodspeed, Denver, Colo., James P. McCarthy, Lindquist & Vennum, Minneapolis, Minn., for Kaiser Steel Corp.

Jeffrie L. Beattie, Denver, Colo.

Julia T. Waggener, Denver, Colo.

Paul F. Hultin, Parcel, Mauro, Hultin & Spaanstra, Denver, Colo., for Joseph A. Frates, Charles S. Holmes, Robert E. Mer-

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue in this appeal is whether the bankruptcy court erred in severing the counterclaims of the Perma Group, the Frates Group and the Perma Frates Joint Venture (PFJV) in *Kaiser Steel Corp. v. Frates*, No. 87–E–135 (Bankr.D.Colo. Feb. 26, 1987) and *Kaiser Steel Corp. v. Rial*, No. 87–E–437 (Bankr.D.Colo. Jan. 15, 1987). The bankruptcy court ruled that these claims should be severed and treated as claims against the underlying estate as a matter of case management, because they were not factually related to the primary claims in *Frates* and *Rial* and because they were contingent on the outcome of these cases. I affirm.

### I. *Facts.*

On May 13, 1987, Kaiser filed its first amended complaint in the *Frates* action. *Frates* centers around the 1985 exchange of assets between Kaiser and the controlling ownership of Kaiser. In the exchange, the Perma Group acquired 100 percent of the common stock of Kaiser. Before the exchange, the Perma Group and the Frates Group each held a fifty percent beneficial interest in the common stock. Kaiser claimed that it was insolvent at the time of the exchange and that the transactions made as part of the exchange were fraudulent conveyances. Kaiser also alleged claims against the defendants based on breach of fiduciary duty, breach of contract, and tort.

On June 15, 1987, Kaiser filed the *Rial* action. Like the *Frates* action, *Rial* was premised on the 1985 exchange of assets. In *Riel*, however, Kaiser sought to recover certain compensation paid to the defendants under the Transaction Incentive Program (TIPS) and other consulting and acquisition payments. Kaiser alleged that these payments were fraudulent conveyances and that the defendants breached their fiduciary duty and engaged in other torts.

On June 5, 1987, members of the Frates Group filed their answers to the *Frates* complaint, pleading various affirmative defenses and asserting two counterclaims. The Frates Group's first counterclaim was that the April 1985 Exchange Agreement obligated Kaiser to indemnify the group for all costs and expenses arising in connection with claims under the agreement or by virtue of the inaccuracy of any information or representation by Kaiser pursuant to the agreement. Second, the Group alleged that under the corporation's bylaws and Delaware law, Kaiser was obligated to indemnify the Group.[1] In answering the *Rial* complaint on August 17, 1989, the Group likewise asserted a counterclaim for indemnification under the corporation's bylaws.

On October 19, 1987, the Perma Group filed its answer in the *Frates* action. In addition, it filed several counterclaims. These counterclaims alleged that Kaiser violated federal securities laws by providing false and misleading information to the Perma Group before the 1985 exchange of assets and in connection with the 1984 leveraged buyout of Kaiser. The Perma Group also counterclaimed that Kaiser was bound to indemnify the group for their actions in connection with the exchange, without specifying the source of these indemnification rights.

Like the Perma and Frates Groups, the PFJV likewise filed a counterclaim against Kaiser with its answer in the *Frates* action. In this counterclaim, the PFJV alleges that Kaiser provided it with false information as to Kaiser's financial condition before the exchange of assets and that Kaiser is therefore responsible for any damage that the PFJV incurs in the *Frates* action. The PFJV also alleged similar third party claims against Touche–Ross & Co., Hewitt Associates, and Claude Bradford, financial advisors to the PFJV in the 1985 exchange of assets and requested indemnification by these parties.

---

**1.** Group members Equivest Associates, P. Peter Prudden III, J. Anthony Frates, and Steven I. Frates did not assert this counterclaim since they were not officers or directors of the corporation.

Through various motions, Kaiser moved to sever or strike the counterclaims of the Perma Group, the Frates Group and the PFJV. In these motions, Kaiser argued that the counterclaims were not factually related to the *Frates* and *Rial* adversary actions and that they should be treated as claims against the estate in the underlying bankruptcy. The bankruptcy court granted Kaiser's motions to strike the counterclaims in two orders, each entered after notice and a hearing. On December 27, 1988, the bankruptcy court entered its order striking the Perma Group's securities law counterclaim, and it later declined to certify this ruling for interlocutory appeal. On March 23, 1989, the bankruptcy court granted Kaiser's motion to sever the indemnification counterclaims of the Perma Group, the Frates Group and the PFJV.[2] The court also severed the counterclaims of other defendants who have not appealed. On April 20, 1989, the court similarly declined to certify an appeal of this order.

## II. *Issues.*

### A. *Standard of Review.*

The parties disagree on what standard of review applies to this appeal. Kaiser argues that the applicable standard is abuse of discretion. *See* Kaiser Brief at 12–13. The Perma and Frates Groups and the PFJV agree that normally an abuse of discretion standard would apply, but argue that since the court applied the wrong legal standards and provided no adequate reasoning for its decisions, review should be de novo. *See* PFJV Opening Brief at 2; Perma Group Brief at 5–6.

The threshold question is what procedural rule applies to the bankruptcy court's severance of these counterclaims. In its motions to sever, Kaiser moved under Bankruptcy Rules 7012, 7013, 7021 and 7042. Bankruptcy Rules 7012 and 7013 do not address the severance of claims or counterclaims. Rule 7012 simply provides for the form and time periods for filing answers and answers to cross-claims and for the admission or denial of the designation of core and non-core matters. Bankruptcy Rule 7013 is similarly unhelpful. While it concerns the filing of counterclaims and cross-claims, the rule does not cover their severance.[3] The rule simply makes Fed.R.Civ.P. 13 applicable to bankruptcy adversary proceedings, with the exception that a party sued by a debtor in possession or a trustee need not state as a counterclaim any prepetition claim (recognizing that the party can instead file a claim against the estate). *See* Bankr.R. 7013 editors' comment.

Kaiser also asserts that Bankruptcy Rule 7021 provides authority for the bankruptcy court's severance of these counterclaims. Rule 7021 states:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

While this rule and its counterpart, Fed.R.Civ.P. 21, have been applied to sever unrelated counterclaims, the rule is more directly related to the severance of improperly joined parties. *See* 3A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 21.05[2] (1989) (distinguishing between severance under Rule 21 and an order for separate trial of a claim under Rule 42); 9 *Collier on Bankruptcy* ¶ 7021.02 at 7021–2 (L. King 15th ed. 1989) (noting that rule applies to severance of claims joined under Rule 18). Consequently, the standards re-

---

**2.** The Perma Group has not appealed the severance of its indemnification claims and it disputes whether Kaiser has moved for a severance of these claims in the *Rial* action. Whether the Perma Groups indemnification claims in *Rial* have been severed is a matter for the bankruptcy court's determination. Regardless of the bankruptcy court's decision on this issue, it has no effect on my disposition of this appeal.

**3.** In incorporating the provisions of Fed.R.Civ.P. 13(i), the rule does make reference to the court's ability to order separate trials under Fed.R. Civ.P. 42(b), providing that final judgment on a severed counterclaim may be entered under Rule 54(b) even if the claims of the opposing party have been dismissed or otherwise disposed of.

lating to severance under Rule 7021 do not directly apply to this situation.

Of the four procedural rules cited by Kaiser, only Bankruptcy Rule 7042 is applicable. Subsection (a) of this rule addresses the consolidation of actions involving a common question of law or fact. Subsection (b) of the rule concerns orders for separate trials. Rule 7042(b) states:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by the United States.

As explained in *Collier on Bankruptcy,*

> Pursuant to Rules 13, 14, 18 and 20 of the Federal Rules of Civil Procedure [4] there is great liberality on joinder of actions and assertion of counterclaims, crossclaims, and third-party claims. When there is such joinder, Rule 42(b) permits the separate trial of claims or issues in order to prevent prejudice, embarrassment, delay or expense.... As in subdivision (a) of Rule 42, the matter is *in the discretion of the bankruptcy judge.*

9 *Collier on Bankruptcy* ¶ 7042.05 at 7042–4 to –5 (L. King 15th ed 1989) (emphasis added, footnotes omitted).

■ The rule that a bankruptcy court's order under Rule 42(b) is reviewable only for an abuse of discretion has been upheld

in *Surf Walk Condominium Ass'n v. Wildman,* 84 B.R. 511 (N.D.Ill.1988). In *Surf Walk,* the district court upheld the bankruptcy court's bifurcation of the trial of Surf Walk's claim against the debtors into phases for liability and damages. *Id.* at 514. Similarly, in the Tenth Circuit, a district court's ruling to sever a claim under Fed.R.Civ.P. 42 is a matter in its discretion. *See Eastridge Dev. Co. v. Halpert Assoc., Inc.,* 853 F.2d 772, 781 (10th Cir. 1988); *Easton v. City of Boulder, Colo.,* 776 F.2d 1441, 1447 (10th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Consequently, the bankruptcy court's decision to sever the defendant's claims in this case should be reviewed for an abuse of discretion.[5]

## B. *Merits of Severance.*

■ "Under the abuse of discretion standard, a [lower] court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir. 1986). An example of an abuse of discretion is where the trial court fails to consider either an applicable legal standard or the facts upon which the exercise of its discretion judgment is based. *See, e.g., Park County Resource Council, Inc. v. United States Dep't of Agriculture,* 817 F.2d 609, 617 (10th Cir.1987); *Hustler Magazine, Inc. v. United States Dist. Court,* 790 F.2d 69, 70–71 (10th Cir.1986); *see also Surf Walk Condominium Ass'n,* 84 B.R. at 514 (bankruptcy court's decision to bifurcate trial "will not be disturbed unless [the]

---

**4.** These rules are applicable in bankruptcy adversary proceedings. *See* Bankr.R. 7013, 7014, 7018, 7020.

**5.** The Perma Group and the PFJV argue, however, that because the bankruptcy court did not make specific findings to support its conclusion, its decision to sever the counterclaims is subject to de novo review. Assuming the lack of specific findings warrants a higher standard of review, there is no reason to apply a higher standard in this case. As revealed by portions of the hearing transcripts cited by Kaiser and in the

record on appeal, the bankruptcy court clearly stated its reasons for severing these counterclaims. *See* Kaiser Brief at 16 & Ex. 3 (transcript of December 16, 1988, hearing in which the court characterized the Perma Group's securities counterclaim as tangential to the primary action and found that it could be better resolved as a claim against the estate); *see also* R. Vol. II at 10–14 (transcript of March 20, 1989 hearing in which the court noted that the indemnification claims were dependent on the outcome of the underlying action).

court finds that no reasonable man could agree with the decision").

Under Fed.R.Civ.P. 42 and Bankr.R. 7042, there are several reasons why a trial court would sever a claim or counterclaim. Convenience, the need to avoid prejudice, expedition and economy are among the bases identified in the rules. In addition, "[t]he reasons for separate trials include avoidance of confusion resulting from similarity or dissimilarity of claims, avoidance of prejudice, unusual difficulty in proving a particular issue, and the inherent power of the court to regulate the order of proof at trial." *In re Revere Copper & Brass, Inc.*, 32 B.R. 577, 581 (Bankr.S.D.N.Y.1983).

In this case, one of the primary reasons for the severance was the fact that the adjudication of these counterclaims, particularly those for indemnification, will be unnecessary unless Kaiser prevails in the *Frates* and *Rial* actions. Thus, as a matter of expedition and economy, the bankruptcy court was justified in severing and postponing the determination of the indemnification-type claims until the outcome of the principal actions is known. Management of the case in this way is a more efficient use of the court's resources and, but for this and other appeals, should result in the quicker resolution of the primary actions.

Furthermore, as noted by the bankruptcy court, one of its primary functions is to resolve disputed claims against the estate. Severance of the Perma Group's securities counterclaim and converting it to a claim against the estate is appropriate under the bankruptcy rules. Although the Perma Group contends that the claim is inextricably connected to the underlying action and that it should continue to be a part of that action, the bankruptcy rules recognize that there is no such thing as a compulsory counterclaim in the bankruptcy context. *See Cook v. United States ex rel. Commodity Credit Corp (In re Earl Roggenbuck Farms, Inc.)*, 51 B.R. 913, 923 (Bankr. E.D.Mich.1985). Under these circumstances, one court has suggested that

> whether to adjudicate the counterclaim concurrently with the case in chief should be determined by examining the

effect the litigation would have on the primary case. Under Rule 13(i), if trying both actions would unduly complicate the litigation, or cause unnecessary delay, the court may order separate trials to ensure an expedient resolution of the plaintiff's case.

*Id.* at 924 (finding sufficient identity of issues between complaint and counterclaim to make dismissal inappropriate).

To retain the Perma Group's securities counterclaim as part of the primary action would inject the new and complex issue of securities fraud in this already complicated litigation. Kaiser's claims are based on fraudulent conveyance, breach of fiduciary duty, negligence and other torts. While the issue of Kaiser's solvency before the exchange is common to both claims, if Kaiser does not establish in the main action that it was insolvent before the 1985 exchange, the Perma Group's securities law claim would likewise fail, since it is based on the contention that Kaiser provided the defendants false information as to its strong financial condition and solvency. Consequently, like the indemnification counterclaims, the Perma Group's securities law counterclaim depends to an extent on the outcome of Kaiser's primary action. Therefore, under the Tenth Circuit standard for the abuse of discretion, the bankruptcy court did not exceed the bounds of permissible choice in this case, since Bankr.R. 7042 expressly provides that matters of convenience and economy can justify the separate trial of a tangentially related counterclaim.

### C. *Setoff and Recoupment.*

The Perma Group finally contends that it will be prejudiced by the severance of its counterclaims because it will forfeit its rights of setoff and recoupment. Setoff and recoupment are distinct concepts in bankruptcy. *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 157 (10th Cir.1986). "Setoff" has been defined as "the right that exists between two parties to net their respective debts where each party, as the result of unrelated transactions, owes the other an unascertained

amount." *Tradex, Inc. v. United States (In re IML Freight, Inc.)*, 65 B.R. 788, 791 (Bankr.D.Utah 1986). Recoupment, on the other hand, "originated as an equitable rule of joinder. It allowed adjudication in one suit of two claims that otherwise had to be brought separately under the common-law forms of action. Under recoupment, a defendant could meet a plaintiff's claim with a countervailing claim that arose 'out of the same transaction.'" *In re B & L Oil*, 782 F.2d at 157 (citation omitted). Thus, the doctrine of setoff requires that there be mutual debts between the debtor and creditor, whereas the doctrine of recoupment requires that the debtor and creditor's claims arise out of the same transaction. *See generally* 4 *Collier on Bankruptcy* ¶ 553.03 (L. King 15th ed. 1989) (distinguishing the terms recoupment, setoff, and counterclaim).

■ With respect to setoff, under the Bankruptcy Code, with certain limitations, a creditor may setoff a mutual debt owed to a debtor that arose before the commencement of the bankruptcy case. 11 U.S.C. § 553. One of these limitations is that the claim for the debt be allowed under the Code. 11 U.S.C. § 502, 553(a)(1); *see Turner v. United States (In re G.S. Omni Corp.)*, 835 F.2d 1317, 1318 (10th Cir.1987) (distinguishing between the proof of claim and the debt which gives rise to the claim); *Stratton v. Equitable Bank, N.A.*, 104 B.R. 713, 735 n. 18 (D.Md.1989). The application of a setoff is not mandatory or automatic and is in the discretion of the bankruptcy court. *In re IML Freight, Inc.*, 65 B.R. at 791.

The Perma Group fails to identify why severing its securities counterclaim and treating it as a claim against the estate would cause it to forfeit its right to setoff. In order for the group's setoff rights to be recognized, the bankruptcy court must first determine whether to allow the claim, since Kaiser has objected to it. *See* 11 U.S.C. § 502(a), (b). There is no reason why this cannot be done as part of the normal claims resolution process; in fact, this is the way it is most commonly done. *Compare Moorefield v. Perlman (In re Monex*

*Corp.)*, 43 B.R. 879, 886 (Bankr.S.D.Fla. 1984) (although guarantor filed no claim against the estate, court treated adversary action against guarantor as action for determination of claim for setoff). Setoffs have even been permitted after the debtor's discharge. *See, e.g., Blake v. Handy (In re Handy)*, 41 B.R. 172 (Bankr.E.D.Va. 1984).

■ It makes no difference whether a creditor's claim for setoff is handled as part of the debtor's adversary action or as part of a separate claims determination proceeding under section 502. As noted in *Waldschmidt v. Columbia Gulf Transmission Co. (In re Fulghum Constr. Corp.)*, 23 B.R. 147, 152–53 (Bankr.M.D. Tenn 1982), *aff'd in part*, 706 F.2d 171 (6th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983), the trustee can effectively require the claim for setoff to be determined in this manner by filing a claim against the estate on behalf of the creditor and then objecting to the claim.

Section 553(a)(1) provides that a creditor otherwise entitled to setoff under § 553(a) may not set off its claim against the debtor to the extent its claim "is disallowed other than under § 502(b)(3) of this title." Section 553 does not contain a requirement that a creditor seeking to exercise a setoff must first file a proof of claim. Neither is such a prerequisite contained in § 542—the section under which the trustee proceeds in this case. The process of disallowing a claim is controlled by 11 U.S.C.A. § 502 (West 1979). Disallowance is initiated by the filing of an objection by a "party in interest." No objection to Columbia's claim has been filed in this case. To the extent that § 502 contemplates the filing of a proof of claim before a party files an objection, § 501 provides that the debtor or the trustee may file a proof of claim on behalf of a creditor who has not itself timely filed. The trustee in this case has initiated no procedure to attack Columbia's claim. Columbia's claim has not been disallowed. Section 553(a)(1) is thus not a bar to setoff by Columbia.

*Id.; see also In re Sutton Investments, Inc.,* 53 B.R. 226, 230 (Bankr.W.D.La. 1985).[6]

The Perma Group likewise protests the impairment of its right to recoupment. The Perma Group's assertion that it has recoupment rights in this case is misplaced. "[M]ost recoupment cases involve[ ] single contracts that provide[ ] for advance payment based on estimates of what ultimately would be owed, subject to later correction, and the analysis in those cases [is] based on the treatment of executory contracts in bankruptcy." *In re B & L Oil Co.,* 782 F.2d at 157; *see also Steinberg v. Illinois Dep't of Mental Health & Developmental Disabilities (In re Klingberg Schools),* 68 B.R. 173, 178–79 (N.D.Ill.1986), *aff'd,* 837 F.2d 763 (7th Cir.1988) (discussing situations in which recoupment has been held to apply). This case does not involve payments under an executory contract and is distinguishable from the cases in which the doctrine of recoupment has been applied. (Most relate to payments under construction contracts or contracts for the supply of goods or services.) Regardless of whether the Perma Group is actually entitled to recoupment in these actions, since the group has not identified why its recoupment rights would be impaired by the severance of its counterclaim, I conclude that the bankruptcy court's ruling is not prejudicial on this basis.

---

**6.** There may be other reasons why the Perma Group has no setoff rights. Setoffs have been denied in cases where the creditor was acting in a fiduciary capacity and where the creditor has been charged with fraud or other torts. In any event, these issues can be decided in the claims determination proceeding. In addition, the Perma Group complains that it cannot financially "withstand the affirmative judgment against them while the bankruptcy court system goes about setting the counterclaims down for trial, argument, briefing, appeal, etc." Perma Group Brief at 12. Since setoff is not a matter of right and is in the discretion of the bankruptcy court, the Perma Group has little basis to complain that it may first have to surrender the amount of any judgment to the estate.