### In re CFS–RELATED SECURITIES FRAUD LITIGATION.

Nos. 99–CV–825 K(J), 00–CV–111–K(J), 99–CV–828–K(J), 99–CV–829–K(J), 99–CV–862–K(J), 99–CV–863–K(J), 99–CV–864–K(J), 99–CV–873–K(J), 00–CV–104K(J), 00–CV–205–K(J), 99–CV–874–K(J), 00–CV–110–K(J), 99–CV–889–K(J), 99–CV–919–K(J), 00–CV–837–K(J), 02–CV–531–K(J).

United States District Court,
N.D. Oklahoma.

Feb. 18, 2003.

Lowell E. Sachnoff, Jeffrey T. Gilbert, James A. Rolfes, Sachnoff & Weaver Ltd., Chicago, IL, David L. Bryant, Bryant Law Firm, Tulsa, OK, Christopher R. Clark, David E. Lieberman, Bina Sanghavi, Sachnoff & Weaver Ltd., Chicago, IL, for plaintiffs.

Pamela Helena Goldberg, James M. Reed, Richard Mark Petrich, Hall Estill Hardwick Gable, Golden & Nelson, Charles Robert Burton, IV, R. Thomas Seymour, Seymour Law Firm, Fred Randolph Lynn, Andrew R. Turner, Paul David Newsome, Jr., Timothy Terah Trump, C. Raymond Patton, Conner & Winters, Montgomery L. Lair, Brewster & De Angelis PLLC, Tulsa, OK, Eric S. Eissenstat, Terry Warren Tippens, John Barnes Heatly, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, Tony Michael Graham, Michael James Gibbons, James L. Kincaid, Crowe & Dunlevy, Paul DeMuro, Fred Dorwart Lawyers, Tulsa, OK, Thomas C. Rice, Elizabeth A. Fuerstman, Simpson, Thacher & Bartlett, Michael A. O'Connor, Chase Manhattan Bank, Legal Dept., New York City, for defendants.

### ORDER ON RATING AGENCIES AND AAM'S MOTIONS TO STAY

JOYNER, United States Magistrate Judge.

Third–Party Defendants Standard & Poor's Credit Market Services (formerly known as Standard & Poor's Rating Agencies, a division of the McGraw–Hill Companies, Inc.), Moody's Investors Service, Inc., and Fitch, Inc., as successor to Fitch Investors Services, L.P., and Duff & Phelps Credit Rating Services (hereafter referred to as the "Rating Agencies"), were joined as third-party Defendants by Defendant Arthur Andersen LLP (hereafter "Andersen"), by Third Party Complaint on December 23, 2002, the deadline for joinder of parties. The Rating Agencies filed motions for: (1) Exemption from the Deposition Protocol Order and a request to Strike, or Sever and Stay Andersen's Third–Party Claims, or alternatively (2) Stay all Proceedings Pursuant to the PSLRA Stay, in each of the cases in which they have been joined.

Andersen and Mayer, Brown, Rowe & Maw (hereafter "Mayer Brown") filed Third–Party Complaints against Third–Party Defendant Asset Allocation & Management Company (hereafter "AAM") on December 23, 2002, the last day for joinder.[1] AAM adopted the Rating Agencies' motions, and requests that it be exempted from the Deposition Protocol Order and that the Third–Party Claims be stricken or severed and stayed. *See* Third–Party Defendant Asset Allocation & Management Company's Adop-

---

1. Mayer Brown filed their Third–Party Complaint in Case No. 00–CV–837–K(J). However, Case No. 00–CV–837–K(J) was previously consolidated by the Court into Case No. 99–CV–919–K(J). Consequently, AAM has only been added as a Third–Party in 99–CV–919–K(J).

tion by Reference of Third–Party Defendant Rating Agencies' Motion for Exemption from Deposition Protocol Order and Motion to Strike or, in the Alternative, to Sever and Stay Andersen's and Mayer Brown's Third-Party Claims, filed January 31, 2003, in Case No. 99–CV–919–K–J.

The Court grants the motion of the Rating Agencies to sever the third-party counterclaims. The Court stays the severed action pursuant to the provisions of the PSLRA. The United States Magistrate Judge enters a separate Report and Recommendation recommending that the District Court deny the Rating Agencies' motions to strike the third-party claims. The Court denies the motion of the Rating Agencies to indefinitely stay the severed action. If the motions to dismiss are denied, the Court will require the parties to begin coordination of discovery with the "In re CFS–Related Securities Fraud Litigation" cases.

The Court denies the motion of AAM to sever and stay the third-party claims against them. [Case No. 00–837–K(J), Docket Nos. 37–1, 37–4, 37–5]. The United States Magistrate Judge enters a separate Report and Recommendation recommending that the District Court deny AAM's motion to strike the third-party claims. [Case No. 00–837–K(J), Docket Nos. 37–2, 37–3].

## I. THE RATING AGENCIES MOTION TO STRIKE, OR IN THE ALTERNATIVE SEVER AND STAY

■ Fed. R. Civ. Pro. 14 sets forth the parameters governing third-party complaints. The Rule provides that any party may move to strike the third-party claim. The decision as to whether or not the claim should remain in the proceeding is left to the sound discretion of the court. *See First Nat'l Bank of Nocona v. Duncan Savings & Loan Ass'n,* 957 F.2d 775, 777 (10th Cir.1992) ("The granting of leave for a defendant to prosecute a third party proceeding under

Rule 14 rests in the sound discretion of the trial court."); Fed. R. Civ. Pro. 14 cmt. to 1963 amendment ("This discretion [is] applicable not merely to the cases ... where the third-party defendant is brought in without leave, but to all impleaders under the rule....").[2]

Courts, in exercising their discretion in determining whether third-party claims should be allowed or stricken, generally balance the benefits of allowing the claim to proceed against the potential prejudice to the plaintiff and the defendant in the lawsuit and, the third-party defendant. The parties urge the Court to consider numerous factors in the assessment of whether or not the third-party claims should be stricken, including:

- the potential prejudice to the third-party defendant;
- the potential prejudice to the other parties in the action;
- the status of discovery in the action;
- the delay in seeking impleader.

*See, e.g., Oliner v. McBride's Indus., Inc.,* 106 F.R.D. 14, 20–21 (S.D.N.Y.1985); *Embassy Electronics, Ltd. v. Lumbermens Mutual Casualty Co.,* 108 F.R.D. 418, 420 (S.D.N.Y.1985); *State Mut. Life Assur. Co. of Am. v. Arthur Andersen & Co.,* 65 F.R.D. 518, 522 (S.D.N.Y.1975); *Hicks v. Long Island R.R.,* 165 F.R.D. 377, 379 (E.D.N.Y. 1996).

Even if a Court concludes that a third-party action should not be stricken, Fed. R. Civ. Pro. 14(a) expressly recognizes that severance of the third-party claims may nevertheless be warranted. Alternatively, severance may be sought under Fed. R. Civ. Pro. 21, which provides that "[a]ny claim against a party may be severed and proceeded with separately." Fed. R. Civ. Pro. 21.

The parties urge the consideration of numerous factors in considering whether or not

---

**2.** The Rating Agencies note in a footnote that Andersen's failure to seek leave of Court to file its third-party complaint is, standing alone, grounds for striking the impleader, even though the third-party complaint was filed on the December 23, 2002 deadline for joinder of parties under this Court's Case Management Order No. 3. Since

this issue was not further argued or briefed by either party, and the Rating Agencies concur that the same factors govern whether impleader should be permitted whether filed with or without leave of court, the Court does not further address this issue.

a properly asserted third-party claim should be severed. The factors include:

- judicial efficiency or economy;
- the prejudice to the parties;
- the avoidance of delay in the underlying trial;
- the delay of the third-party plaintiff in asserting the claim; and
- whether or not discovery favors separate trials.

*In re Air Crash Disaster*, 86 F.3d 498 (6th Cir.1996); *Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir.1984); *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 204 F.R.D. 248, 251 (S.D.N.Y.2001).

■ The Court has considered the arguments of the parties, the briefs submitted by the parties, and the relevant case law. In exercising and reviewing these factors with regard to the present case and the asserted third-party complaints, the Court concludes that Andersen's third-party complaints against the Rating Agencies should not be stricken, but should be severed from the underlying lawsuit.

## A. RELATIVE FACTORS FOR CONSIDERATION IN DETERMINATION OF SEVERANCE OR STRIKE

### 1. Judicial Efficiency

The parties have noted numerous factors to the Court which should be considered in resolving a motion to sever or strike a third-party claim. Andersen notes that these numerous factors are not weighted equally by the courts, and that considerations of judicial efficiency are weighted more heavily that the potential prejudice to the parties. *Hicks*, 165 F.R.D. at 379 ("[W]hile the court must weigh efficiency against prejudice, the case law makes clear that this is not a neutral balancing, and that generally, the interests of efficiency will outweigh the dangers of prejudice.").

Joinder of the Rating Agencies into the "In re CFS–Related Securities Fraud Litigation" actions promotes judicial economy to the degree that all claims can be handled in "one action."[3] Many courts find that judicial efficiency is promoted by permitting a contribution claim to continue with the main actions. *See, e.g., FMC Corp. v. Vendo Co.*, 196 F.Supp.2d 1023, 1039 (E.D.Cal.2002).

To the degree, however, that the "In re CFS–Related Securities Fraud Litigation" actions are already sufficiently complicated, severing the claims against the Rating Agencies and permitting them to continue "along side" the "In re CFS–Related Securities Fraud Litigation" actions may permit a greater ease in the handling of motions filed in the "In re CFS–Related Securities Fraud Litigation" and the severed action. For example, the Court notes that it currently has pending over 50 motions to dismiss cross-claims and counterclaims. To the extent that the Rating Agencies plan to file motions to dismiss, and because those motions, due to the nature of the relationship of the Rating Agencies to the Defendant, will be different from the currently pending motions, separately handling those motions in a severed action will mean that the "In re CFS–Related Securities Fraud Litigation" will not be additionally complicated.

Further, only one Defendant has chosen to sue the Rating Agencies. By severing the Rating Agencies and the Defendant into a separate lawsuit, the Court can more easily handle service issues. Currently, service by the Court in the fourteen "In re CFS–Related Securities Fraud Litigation" actions involves an email service list which includes over 80 attorneys. Only a small sub-set of those attorneys are involved in the third-party claims involving the Rating Agencies.

### 2. Prejudice to the Rating Agencies

The Rating Agencies assert that due to the current status of discovery in the "In re CFS–Related Securities Fraud Litigation" actions, forcing the Rating Agencies to participate in the "In re CFS–Related Securities Fraud Litigation" actions, with depositions scheduled to begin in a matter of days is prejudicial.

---

3. As the parties know, the "In re CFS–Related Securities Fraud Litigation" actions are actually 14 separate actions (six of the fourteen actions are consolidated lawsuits) that have been assigned to the same District Judge and Magistrate Judge.

The "In re CFS–Related Securities Fraud Litigation" actions in this Court involve over 500 Plaintiffs and eleven Defendants. The first action was filed in 1999. Discovery in the pending actions was stayed pending the Court's determination of motions to dismiss filed by multiple Defendants. Beginning in May of 2002, the discovery stay was lifted. Since that time, the parties have completed "Phase One" document discovery. The document discovery has involved the issuance of over 150 non-party subpoenas; the production of millions of pages of documents by the parties and the subpoenaed non-parties; the creation of a document repository for the housing of the documents; and the establishment of a Deposition Protocol Committee for determining and identifying witnesses who will be deposed and the sequencing of the witnesses. The current deposition schedule involves two-track depositions to begin February 17, 2003.

### 3. Prejudice to the Original Parties in the Action

The 500 plus Plaintiffs strongly argue for severance of the third-party claims. The parties in the "In re CFS–Related Securities Fraud Litigation" action and the Court have spent many hours negotiating a deposition protocol which reflects the interests of the Plaintiffs, the eleven defendants, and the schedules of the 50 to 100 counsel involved. Two-track depositions will begin the same date that this Order is issued by the Court. To insert the Third–Party Defendants into this protocol and deposition schedule at this late date would prejudice the original parties to the action. The Court concludes that the prejudice to the current parties to the action and the prejudice to the Rating Agencies favor severance of this action.

### 4. Delay in Asserting Third–Party Claims and Joining Third–Party Defendants

■ In determining whether to strike or sever a third-party claim, the delay or timeliness of the claim is a factor courts have considered. *See, e.g., General Elec. Co. v. Irvin,* 274 F.2d 175, 178 (6th Cir.1960). The third-party plaintiff bears the burden of showing a reasonable excuse for the delay. *Oliner v. McBride's Indus., Inc.,* 106 F.R.D. 14, 21 (S.D.N.Y.1985).

Andersen asserts that it needed to complete the production and review of paper discovery before it could file its third-party complaints. Document production was complete on November 24, 2002. At oral argument, counsel for Andersen was able to reference only one document which was produced during the latter part of document discovery that was directly relevant to the third-party complaints. The potential claim by Andersen against the Rating Agencies is not "new." Andersen discussed the claim and the potential liability of the Rating Agencies more than two years ago during a hearing before this Court.

The Rating Agencies refer the Court to *In re Air Crash Disaster,* 86 F.3d 498, 517 (6th Cir.1996). In *In re Air Crash Disaster,* the defendant waited until the last day of joinder to file its third-party claim, although the record indicated that the facts supporting the claim had been known for at least the preceding year. The Sixth Circuit upheld the trial court's discretion in severing the third-party claims.

Based on the facts presented to this Court, the Court is persuaded that a severance of these claims is appropriate.

### 5. Prejudice to Arthur Andersen

The Rating Agencies argue that Andersen would suffer no prejudice if the prosecution of the claims against the Rating Agencies were delayed until the end of this litigation. Andersen maintains that Andersen will suffer extraordinary prejudice because if the third-party claims are stayed pending the outcome of this action, at the close of this action, Andersen will be forced to incur all discovery costs again, and will be subjected to duplicative discovery. Andersen additionally asserts that Andersen faces additional potential prejudice if the Rating Agencies are not present at the trial of this action due to the possibility of inconsistent verdicts.

### 6. The Contingent Nature of the Third–Party Claims

The Rating Agencies note the contingent nature of Andersen's claims and argue that Andersen has a claim for contribution only if judgment is entered against Andersen and only if Andersen pays more than their *pro rata* share of that judgment.[4] The Rating Agencies characterize this possibility as remote. The Rating Agencies argue that Courts have severed third-party claims when the claims were contingent on the outcome of the underlying suit, and that this Court should do the same. *See, e.g., In re Kaiser Steel Corp.*, 110 B.R. 20, 25 (D.Colo.1990); *Beights v. W.R. Grace & Co.*, 62 F.R.D. 546, 548–49 (W.D.Okla.1974).

### B. BALANCING THE FACTORS SUPPORTS A SEVERANCE OF THE THIRD–PARTY CLAIMS

The parties focus on judicial economy and efficiency. Andersen suggests it is more economical to conduct discovery at the same time, and not duplicate actions. The Rating Agencies suggest that if the case is severed and stayed the possibility exists that there will be no need for the severed action to ever proceed. The Court has considered all arguments of judicial economy and efficiency presented by the parties. Generally, by severing the third-party complaints and staying that action pending a decision on the motions to dismiss, the Court believes that judicial economy will be best served. If the motions to dismiss are granted, the Rating Agencies will not have to participate in deposition discovery, and the "In re CFS–Related Securities Fraud Litigation" cases will not be further complicated by the addition of parties to the deposition process. If the motions to dismiss are denied, to the extent the parties can take advantage of the on-going discovery process in the "In re CFS–Related Securities Fraud Litigation" cases, duplicative discovery costs are not incurred, and some depositions will not be taken more than once. Finally, by severing the third-party claims into a separate lawsuit, the Court can more effectively manage claims which are distinctly different from the remaining claims in the "In re CFS–Related Securities Fraud" actions.

Andersen's primary argument is that, if the claims are severed and stayed, Andersen will be forced to undertake costly discovery twice. The Court discusses the issues relative to the PSLRA stay in the third part of this Order.[5] Because the Court is convinced that the PSLRA stay applies during the pendency of any motions to dismiss filed by the Rating Agencies, discovery in the severed action must be stayed until those motions are resolved. However, to lessen the duplicative costs of discovery, if the motions to dismiss are denied, the parties will be required to coordinate discovery with the "In re CFS–Related Securities Fraud Litigation" cases after the stay is lifted. At the close of the discovery in the "In re CFS–Related Securities Fraud Litigation" cases, the parties will have to determine what additional discovery is necessary in the severed action.

The Court notes that Andersen has requested and been granted additional time, until April 4, 2003, to respond to the motions to dismiss which are anticipated by the Rating Agencies on March 3, 2003. The Court cautions that the additional time taken by the parties will impact the lifting of the PSLRA stay and the subsequent coordination of discovery with the "in re CFS–Related Securities Fraud Litigation" cases. Andersen re-

---

4. Andersen asserts a claim for indemnification only against Standard and Poors.

5. As discussed in the part three of this Order, which addresses the applicability of the PSLRA stay, discovery must be stayed as to these third-party complaints pursuant to the PSLRA. If these complaints are not severed, but remain a part of the original lawsuits, the Court and parties must address whether or not the PSLRA stays all discovery in the original action. With depositions scheduled to start on February 18, 2003, a suspension of the on-going discovery schedule would result in great prejudice to the original parties in the "In re CFS–Related Securities Fraud Litigation." The Court is not deciding and does not address whether the PSLRA would or would not stay all discovery in the original action pending resolution of the motions to dismiss the third-party complaint if the third-party complaints are not severed. Because the Court separately concludes that severance of the third-party complaints is required, the issue of whether or not a stay of the main action would be necessary is avoided.

quests and takes the additional time at its own risk to the efforts to coordinate discovery in the severed action with the discovery in the "In re CFS–Related Securities Fraud Litigation" cases. The Court notes that it will not grant additional extensions of time in regard to the motions to dismiss. The Court will set the motions for hearing on an expedited basis and will place a priority on deciding the motions.

After a consideration of the various factors discussed and outlined by the parties, the Court **GRANTS** the motion to sever. The best course of action is to sever the third-party claims into a separate lawsuit; stay that lawsuit pursuant to the PSLRA; and require coordination of discovery with the "In re CFS–Related Securities Fraud Litigation" cases after the lifting of the PSLRA stay.

The Court **GRANTS** the Rating Agencies' motion to be exempt from the requirements of the Deposition Protocol Order. The Court has concluded, for numerous reasons, that the third-party complaints against the Rating Agencies should be severed. Because the actions are being severed into a separate case, which will then be stayed under the PSLRA, the Court concludes that the Rating Agencies are not bound by the Deposition Protocol Order in this action.

The Court finds that the motion to indefinitely stay the claims should be **DENIED**. The Court is not persuaded that a stay pending the outcome of the "In re CFS–Related Securities Fraud Litigation" is the best course of action. Considering matters of judicial efficiency, and issues of prejudice to Andersen, and the cost of discovery to other Defendants due to duplicative depositions, to the degree that the severed lawsuit can coordinate some discovery with the "In re CFS–Related Securities Fraud Litigation" actions, these considerations will be served.

The Rating Agencies filed a motion to "strike" or in the alternative "sever and stay" Andersen's third-party claims. The language "strike" appears in Fed. R. Civ. Pro. 14. The emphasis of the Rating Agencies argument and brief is on severance of the third-party claims, and a stay of the severed action. At oral argument, the Rating Agen-

cies noted that "striking" the claims would be tantamount to a dismissal of the claims. To the extent that the Rating Agencies seek a dismissal of the third-party claims, at this stage of the litigation, the United States Magistrate Judge recommends that the District Court **DENY** the motion to strike or dismiss. The United States Magistrate Judge will enter a separate Report and Recommendation addressing recommending that the District Court deny the motion to strike the third-party claims. *See* 28 U.S.C. § 636.

If the Court grants the Rating Agencies' motions to dismiss the third-party complaints, and no third-party complaints remain, the Rating Agencies' participation in discovery is rendered moot. If the motions to dismiss are not granted, the Court intends that, at the time the PSLRA stay is lifted, the parties in the severed action will begin participating in the remaining deposition discovery in the "In re CFS–Related Securities Fraud Litigation" cases. When the stay is lifted, the Court will require that the parties in the severed action coordinate all discovery with the "In re CFS–Related Securities Fraud Litigation" cases.

By the time the motions to dismiss are decided, the Rating Agencies will no longer be "new" to the action. Because of subpoenas which were served on the Rating Agencies prior to their joinder in this action, Andersen already has document production from the Rating Agencies. In addition, all parties in the "In re CFS–Related Securities Fraud Litigation" cases have completed document production into repositories to which the Rating Agencies have access. If the Rating Agencies choose, the Rating Agencies may review the document repositories while the motions to dismiss are pending. At oral argument, counsel for Standard and Poor's Credit Market Services noted that from June 2000 until March 2002 Andersen logged 363 days of attorney time in the IKON repository. The PSLRA stay was in place during that time.

## II. AAM'S MOTION TO STRIKE, OR ALTERNATIVELY SEVER AND STAY CLAIMS

■ AAM has been sued as a Third–Party Defendant by Andersen and Mayer Brown.

AAM joined the Rating Agencies motions to sever or stay the third-party claims. The Court has reviewed the arguments presented by the parties, and considered the briefs and the applicable case law. The Court is not persuaded that the third-party claims against AAM should be stricken or severed and stayed.

The position of AAM, in this litigation, is different from the position of the Rating Agencies. AAM is sued as an investment advisor. Numerous other investment advisors have been sued in the "In re CFS–Related Securities Fraud Litigation" cases. AAM is the only investment advisor which has requested that the claims against it be severed and stayed. Although AAM is a comparative newcomer to this litigation, other similarly-situated investment advisors are not. The Court is not persuaded that requiring AAM to be bound by the Deposition Protocol Order, or requiring their participation in discovery would unduly prejudice AAM. To the extent that other investment advisors are in the litigation, their actions in the litigation may serve to additionally protect the interests of AAM.

The Court has considered the prejudice to AAM as compared to the prejudice to Andersen. Severing and staying AAM's claims until the close of this litigation would potentially result in duplicative discovery, the possibility of inconsistent verdicts, and subject numerous individuals to additional depositions.

The Court does recognize that the joinder of AAM in December, with depositions beginning in mid-February, may present some challenges to AAM. The Court is not persuaded that these challenges merit the complete severance of the claims against AAM from this lawsuit. The Court believes that, if necessary, relief can be fashioned in this lawsuit which will protect AAM. The potential prejudice of the joinder of AAM in December, with depositions beginning in February is less than the potential prejudice to the Rating Agencies, because other parties in the litigation have interests similar to AAM. The Court recognizes that other parties are not required to protect AAM's interests. Therefore, prior to the close of fact-witness deposition discovery, AAM may file a motion detailing the prejudice AAM has suffered because AAM was required to participate in deposition discovery which began within two months of their joinder. The Court will endeavor to fashion whatever relief is warranted and necessary to protect AAM's interests while also imposing as small as possible a burden on other parties to the litigation.

The Court recognizes that the decision with regard to AAM is different from the decision made by the Court with regard to the Rating Agencies. The decision to stay the Rating Agencies severed action is compelled by the PSLRA. In addition, the position of the investment advisors is different than the Rating Agencies. The Rating Agencies, as a group, are new to this litigation. The Rating Agencies have interests which are separate and distinct from any party currently involved in the litigation, and the possibility that their interests are not protected by the current parties to the litigation is more likely. The Court chooses to treat the Rating Agencies and AAM differently.

## III. THE PSLRA REQUIRES A STAY OF DISCOVERY

### A. THE COURT HAS NOT PREVIOUSLY ADDRESSED, ON THE MERITS, THE APPLICABILITY OF THE PSLRA STAY TO PENDING MOTIONS TO DISMISS CROSS-CLAIMS, COUNTER-CLAIMS, OR THIRD-PARTY CLAIMS

Andersen argues that the Court has previously decided the issue of whether or not a motion to dismiss a cross-claim or third-party claim invokes the PSLRA stay and concluded that the PSLRA stay is not invoked. The Court disagrees. The Court previously entered a PSLRA-compelled stay of discovery in the "In re CFS–Related Securities Fraud Litigation" actions based on the motions to dismiss filed by the Defendants against the Plaintiffs. Following adoption by the District Court of the Report and Recommendation disposing of those motions, the stay was lifted. At the time the stay was lifted there remained pending some 61 motions to dismiss directed at crossclaims and third-party

complaints filed among parties. This Court has discussed whether those pending motions to dismiss trigger the PSLRA stay on three occasions.

First, in an Order dated December 27, 2001, the Court refused to allow discovery from Chase Securities even though Chase had no pending motion to dismiss. By footnote, the Court noted that it had briefly reviewed the crossclaims and was "not convinced that the indemnity, contribution, negligence and fraud claims raised in these pleadings arise under Chapter 2B of the 1934 Securities Act, or that, given its legislative history, the PSLRA's stay should apply to a motion seeking only to dismiss claims which do not arise under Chapter 2B of the 1934 Securities Act." [6] *In re CFS–Related Securities Fraud Litigation,* 179 F.Supp.2d 1260, 1263 n. 2 (N.D.Okla.2001). The Court additionally noted that "[i]f, once all of the motions to dismiss the § 10(b) and § 20(a) claims in this case have been decided, there is a dispute about whether the PSLRA's discovery stay is triggered by the filing of a motion to dismiss claims not arising under Chapter 2B of the 1934 Securities Act, the parties may raise that issue upon proper briefing." *In re CFS–Related Securities Fraud Litigation,* 179 F.Supp.2d at 1263 n. 2 (N.D.Okla.2001).

Second, during a hearing on May 10, 2002, the Court informed the parties that a brief review of some of the cross-claims had not persuaded the Court that the pending motions to dismiss the cross-claims required the continued imposition of the stay. The Court invited argument or additional briefing by the parties. Counsel for Chase, Gertrude Brady, Mayer Brown and Platt, and Andersen announced they were not going to press the issue and they were agreeable to proceeding with discovery. No parties filed additional briefs objecting to the lifting of the PSLRA stay, and no parties have, during the on-going discovery process, asserted that the Court should impose the PSLRA stay. The Court has not, until this time, addressed additional briefs or motions on the applicability of a stay under the PSLRA to third-party complaints.

Finally, in Case Management Order No. 2, the Court found that the stay of discovery was no longer applicable. The Case Management Order contains no discussion of the PSLRA stay, and is merely a reflection of the outcome of the May 10, 2002 hearing— that the parties would begin participation in discovery, and the PSLRA stay was no longer applicable.

In the first two references to the PSLRA stay, the Court noted only that it had performed a cursory review of some of the counterclaims and cross-claims and was not convinced that the claims "arose under the chapter." As discussed above, one of the prerequisites to application of the PSLRA stay is that the claim arise under the chapter. The Court has not previously addressed the merits of the applicability of a PSLRA stay to this action due to pending motions to dismiss cross-claims, counterclaims, or third-party claims. The Court now addresses that question.

### B. THE PSLRA STAY IS TRIGGERED BY THE PROMISE OF THE RATING AGENCIES TO FILE MOTIONS TO DISMISS THE THIRD-PARTY COMPLAINTS

The relevant section of the Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u–4(b)(3)(B). The language of § 78u–4(b)(3)(B) is clear, and provides that the PSLRA's discovery stay applies when there is (1) a private action, (2) which arises under Chapter 2B of the 1934 Securities Act,

---

6. The footnote references two document numbers, which refer to counterclaims filed by Bartmann. The counterclaims appear to allege common law causes of action for contribution and do not specify the Act. The Rating Agencies describe the cross-claims by the Bartmanns against two other parties as involving declaratory judgment, indemnity, contribution, negligence and fraud.

and (3) in which a motion to dismiss is pending.

There is no debate that the third-party complaints asserted against the Rating Agencies constitute private actions, which means that the first requirement for the stay is met.

In this private action, Andersen is the Third–Party Plaintiff. Andersen has asserted contribution claims against the Rating Agencies under 15 U.S.C. § 78u–4(f). Andersen requests contribution for alleged violations of Section 10(b) of the Securities and Exchange Act. A request for contribution under 15 U.S.C. § 78u–4(f) is a private action arising "under this chapter," which is the second requirement under the statute.

The third requirement for the stay is a pending motion to dismiss. The Rating Agencies have indicated that they intend to file motions to dismiss the Third–Party claims filed against them.[7]

The issue, therefore, is whether a motion to dismiss a third-party claim qualifies as a motion to dismiss under the plain language of the statute. The third-party complaints are basically independent actions by a Plaintiff (who is a Defendant in the primary case) against a new Third–Party Defendant. At the close of this litigation Andersen could bring a separate lawsuit against the Rating Agencies. Other than the fact that Andersen chose to bring these claims in a pending lawsuit, the Court is unable to discern any characteristics that would render the third-party claims filed by Andersen in this lawsuit distinct from a "private action arising under this chapter." All three requirements of the statute are met, and under the plain language of the statute, the filing of the motions to dismiss triggers the stay.

Andersen refers the Court to two cases: *DS Bond Fund v. Gleacher NatWest, Inc.,* No. 99–116 (MJD/JGL), 2001 WL 1168809, 2001 U.S. Dist. LEXIS 7309 (D.Minn. May 1, 2001); and *In re Motel 6 Securities Litiga-*

*tion,* 2000 WL 322782 (S.D.N.Y. March 28, 2000). Andersen asserts that because the courts decided the third-party defendants' motions to dismiss federal contribution claims without conducting any analysis of whether or not the complaint met the PSLRA's heightened pleading standard for scienter or fraud, the cases support a finding that the PSLRA's heightened pleading provisions, including the stay, are not applicable to contribution claims. Neither case addresses whether or not a PSLRA stay is required under the statute. Andersen attempts to draw that conclusion by arguing that the cases do not apply the PSLRA in analyzing the contribution claim when deciding a motion to dismiss. The Court is not persuaded that a court decision which does not specifically reference the PSLRA logically leads to a conclusion that the same court would find that the PSLRA stay is inapplicable.

In *In re Motel 6 Securities Litigation,* 2000 WL 322782 (S.D.N.Y. March 28, 2000), the Plaintiffs alleged a class action insider trading scheme. Andersen asserts that the *Motel 6* court declined to apply the heightened pleading standard under the PSLRA. The Court has reviewed the *Motel 6* case and is uncertain as to the standard applied by the District Court. Initially, the District Court noted that the motion to dismiss alleged that the claim for contribution was barred because the third-party plaintiff asserting the right to contribution had not alleged that the third-party plaintiff knowingly committed fraud or that he and the third-party defendant were joint tortfeasors. The court noted generally that "[a] third-party plaintiff seeking contribution for liability under the federal securities laws must set forth sufficient allegations in the third-party complaint to demonstrate that the third-party defendant itself violated the federal securities laws." *Id.* (citations omitted) at *3. The Court concluded that the third-party complaint sufficiently al-

---

7. The Rating Agencies refer the Court to cases suggesting that the mere assertion of the intent to file a motion to dismiss is sufficient to trigger the PSLRA stay. *See, e.g. Faulkner v. Verizon Communications,* 156 F.Supp.2d 384, 402 (S.D.N.Y. 2001); *Cowen Sec. Corp. v. U.S. Dist. Ct. for the N. Dist. of Cal.,* 189 F.3d 909, 912–13 (9th Cir. 1999). This point has not been specifically chal-

lenged by Andersen. The motions to dismiss are due March 3, 2003. [Docket No. 407–1] (granting Rating Agency until March 3, 2002[sic] to file an Answer or other pleading). The Court will enter the stay, conditional on the filing of Motions to Dismiss the claims which arise under the Act on March 3, 2003. If no such motions are filed on that date, the stay will be lifted.

leged that the third-party defendant violated federal securities laws and that if the defendant was found liable to the plaintiff for insider trading, then the third-party defendant shared in that liability. The court never addresses the standard applied by the court.

In the portion of the action addressing "fraud," the *Motel 6* court specifically notes the PSLRA and the requirement that averments of fraud must be with particularity. This could be interpreted as an indication that the court understood the applicability of the PSLRA and intentionally concluded that it did not apply to the contribution claims, and therefore declined to discuss the PSLRA in the contribution section. Or, the court could have declined to discuss the PSLRA and whether it specifically applied to contribution claims either because the underlying claim was for insider trading and fraud was not alleged, or because the parties did not specifically assert defects under the PSLRA.

Andersen urges that the court did not apply the heightened pleading requirements of the PSLRA, and that should be taken as an indication that the PSLRA stay requirements do not apply to a contribution claim. The Rating Agencies note that the case is one for insider trading and generally fraud allegations are not part of insider trading cases. The Court is unable to ascertain, based on a review of the case, the exact standard applied by the District Court in *Motel 6*. Regardless, the Court concludes that the case is not instructive as to a result which must be reached on the facts before this Court.

Andersen argues that the *DS Bond Fund v. Gleacher NatWest, Inc.* Court did not conduct an analysis of whether the complaints met the PSLRA's heightened pleading standard. The *DS Bond Fund* case did, however, note the elements of a 10b–5 claim, and noted that "[p]roof of scienter—the intent to deceive, manipulate or defraud—is necessary for a plaintiff to prevail under Rule 10b–5. Because a Rule 10b–5 claim is necessarily grounded in fraud, the more stringent pleading requirements of Fed. R. Civ. Pro. 9(b) apply to complaints alleging a 10b–5 violation." *DS Bond Fund v. Gleacher NatWest,*

*Inc.,* no. 99–116 (MJD/JGL), 2001 WL 1168809, 2001 U.S. Dist. LEXIS 7309 (D.Minn. May 1, 2001).

The Court is not persuaded by the authorities cited by Andersen. The language of the statute requires a stay, absent certain conditions, when motions to dismiss have been filed against causes of action "arising under this chapter." The Court concludes that the contribution claims asserted by Andersen arise under this chapter, and the PSLRA stay provisions are triggered by the Rating Agencies expressed intent to file motions to dismiss those claims.

**C. THE PSLRA STATUTE DOES NOT REQUIRE A STAY OF THE MAIN ACTION DUE TO CURRENTLY PENDING MOTIONS TO DISMISS FILED BY DEFENDANTS AGAINST EACH OTHER**

▇ Andersen argues that if the Court finds that a PSLRA stay is appropriate with regard to motions to dismiss filed by the Rating Agencies, that the Court is likewise obligated to conclude that the pending motions to dismiss the cross-claims and counterclaims filed by the current Defendants in the "In re CFS–Related Securities Fraud Litigation" actions requires an imposition of a stay. The Court is not persuaded by Andersen's reasoning. The Court is not convinced that a finding that the PSLRA stay should be imposed with respect to claims against the Rating Agencies translates into a finding that the motions to dismiss the cross-claims and counterclaims filed by the Defendants against each other require the imposition of a stay.

Initially, the Court observes that none of the parties in the *In re CFS–Related Securities Fraud Litigation* actions have previously asserted the applicability of the stay. The Court has not, at this time, separately analyzed each of the cross-claims and counterclaims to determine whether they constitute actions "arising under this chapter." In May of 2002, the Court invited additional briefing on the issue of whether or not the main action should be stayed. None of the parties chose to further pursue the stay. At oral argument on May 10, 2002, J.P. Morgan/Chase, Brady, Mayer Brown, and Ander-

sen agreed to participate in discovery and not pursue the issue of the stay further. Since that time, and numerous Court hearings, attorney hours, and scheduling and planning conferences later, the parties have completed document production and devised a two-track deposition schedule which is set to begin in less than one week. If any parties, at this late date, assert that the currently pending motions to dismiss the cross-claims and counterclaims [8] require the institution of a PSLRA stay, the Court finds that the party has waived their right to assert that the stay should be imposed.[9]

Andersen attempts to base their argument, in part, on the prior finding by this Court that a pending motion to dismiss required the stay of *all* discovery in the action. *In re CFS–Related Securities Fraud Litigation,* 179 F.Supp.2d 1260 (N.D.Okla.2001), this Court found that the PSLRA stay prohibited discovery against non-moving Defendants because some Defendants to the action had filed a motion to dismiss.

> As long as any defendant has filed a motion to dismiss claims arising under Chapter 2B of the 1934 Securities Act, the PSLRA stays "all discovery," even discovery against answering, non-moving defendants. If this were not so, the PSLRA's stay would be of little benefit to those defendants who do move to dismiss.

*Id.* at 1263. The Court is not distancing itself from its prior ruling. The prior ruling of the Court was concerned solely with motions to dismiss the complaints filed by the plaintiff in the action. This Court has not yet considered the differences, if any, of motions to dismiss filed by a defendants against another defendant.

■ Legislative history indicates that the purpose of the PSLRA is to shield parties from baseless suits and prevent plaintiffs from filing frivolous lawsuits with the aim of conducting discovery with the hope of finding a sustainable claim. *See, e.g., In re Lernout & Hauspie Securities Litigation,* 214 F.Supp.2d 100 (D.Mass.2002). Consequently, the stay of discovery prevents the incurrence of needless discovery costs pending a determination by the court that the plaintiff has pled a *prima facie* case. With regard to the Defendants in the main action, that determination has been made. The Court has decided Defendants' motions to dismiss, and the claims against Defendants continue in this action. Although the Defendants have filed claims against each other, and have filed motions to dismiss those claims, regardless of the Court's decision with regard to those remaining motions to dismiss, all Defendants will remain as parties to this lawsuit.

In this regard, the decision of the *In re Lernout* Court with regard to the discovery stay is well reasoned. The *Lernout* Court permitted discovery against senior officers with some restrictions. The Court specifically noted that it had previously "denied four motions to dismiss and [had] benefitted from extensive briefing and a hearing on the allegations against the four senior officers...." *Id.* at 105. The court concluded "[n]o court has resolved the textual ambiguity in this scenario where a federal court has had the opportunity to triage the core allegations of securities fraud and determined that they pass PSLRA muster." *Id.* Similarly, this Court is persuaded that, in the "In re CFS–Related Securities Fraud Litigation" cases, the complaints have been sufficiently tested, and permitting discovery to continue with respect to the Defendants remaining in the action is not violative of the intent of the PSLRA stay provisions.

---

**8.** The Court additionally notes that the currently pending motions to dismiss the cross-claims and counterclaims have been set for hearing. The hearing date has been moved, at the request of the parties, on two separate occasions.

**9.** Counsel for Andersen, at oral argument, suggested that the Rating Agencies had in some manner waived their rights to assert the applicability of a PSLRA stay by reviewing documents at the IKON or RLS depositories. The Rating Agencies, of course, were obligated to begin a review of the documents to file the currently pending motions. The Court will not construe such necessary actions as a waiver. However, to the extent Andersen's argument has any appeal, Andersen has, under Andersen's theory, waived any right to assert that a PSLRA stay should be instituted over the remainder of the action given Andersen's participation in document discovery and the scheduling of depositions over the past several months.

The position of the Defendants is different from the position of the Rating Agencies as Third–Party Defendants. With regard to the Rating Agencies, no determination has been made as to whether or not the causes of action asserted against the Rating Agencies are properly pled. If the Court decides the Rating Agencies' motions to dismiss in favor of the Rating Agencies, the Rating Agencies will no longer be parties to this lawsuit. The purpose of the PSLRA stay is, in part, to prevent the incurrence of discovery costs to a party prior to a determination that a cause of action against the party has been properly pled. In this case, that purpose is served by a stay of discovery with regard to the Rating Agencies. That purpose is not served by a stay of discovery as to remaining Defendants due solely to the Defendants' motions to dismiss cross-claims and counter-claims.

IT IS SO ORDERED.